STATE of South Dakota, Plaintiff
and Appellee,

v.

Clifford C. JOHNSON, Defendant
and Appellant.

No. 13513.

Supreme Court of South Dakota.

Argued March 24, 1982.

Decided June 2, 1982.

Richard Dale, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Thomas K. Wilka of Burns, Hagen & Wilka, Sioux Falls, for defendant and appellant.

HENDERSON, Justice.

## ACTION

A Minnehaha County jury found appellant Clifford C. Johnson guilty of first-degree burglary and aggravated assault. Prison sentences of fifteen and five years, respectively, were pronounced by the trial court. Appellant appeals from the judgments entered thereon. Five appellate issues are treated below. We affirm.

## FACTS

During the evening hours of January 5, 1981, appellant and his companion, Timothy Strother, were driving around Sioux Falls, South Dakota, drinking beer in appellant's van. Subsequent to procuring shotguns, purchasing ammunition and firing at some beer cans at the edge of town, the two individuals drove to a residence (with appellant driving the van) in south Sioux Falls, clad themselves in nylon masks, and entered the home armed with shotguns. The residence was the home of Rollie and Marlys Yates and their eleven-year-old son, David. Mrs. Yates' mother, Naomi M. Thorson, was living with the Yates family although she maintained a separate residence of her own. Mr. Yates was not in the home at this time.

After entering the Yates residence, Strother encountered Mrs. Thorson in the kitchen area and ordered her to lie down on the floor as he pointed a sawed-off shotgun at her. At this time, Mrs. Thorson saw an individual wearing a blue jacket walk through the hallway toward a rear bedroom and bathroom. At trial, appellant stated that he was wearing a blue jacket while in the Yates home. The drapes in this bedroom were later discovered to have been closed, the telephone off the hook and a wall plaque knocked down. When Mrs. Thorson saw Strother, she screamed which attracted Mrs. Yates and David, who were in the family room. Mrs. Yates immediately went to her mother. Strother then told Mrs. Yates to lie down which she did in the family room. David, however, after seeing Strother, ran out the side door of the home and entered the garage in an effort to hide.

Strother and appellant went looking for David and, as David was attempting to leave through the main garage door, both men, armed, stopped him. During this time, Mrs. Yates had escaped and ran to neighbors. Subsequently, she saw appellant and Strother leave her home and depart in the aforementioned van, which she described as white with a spare-tire rack on the rear.

The Sioux Falls police were immediately notified of the incident and given a description of the van. Officer Nick Boschee of the Sioux Falls Police Department heard this transmission and observed a van matching the description of appellant's van. Officer Boschee testified at the motion to suppress hearing that he also heard that the assailants were armed with shotguns. After following the van for a period of time, and requesting assistance, Officer Boschee stopped the van. Appellant, who was driving, and Strother stepped out of the van and were immediately given a pat-down search.

At the suppression hearing, Officer Conrad Smith of the Sioux Falls Police Department, who arrived at the scene at approximately the same time as Officer Boschee, testified that Officer Boschee read appellant his Miranda[1] rights, which appellant stated that he understood.

Subsequent to appellant and Strother leaving the van, Officer Boschee approached it on the passenger's side (the passenger door had been left open), looked inside, viewed numerous shotgun shells and "balled-up" nylon. While Officer Boschee was in the van, in the passenger's seat, he discovered a sawed-off shotgun that had a blue jacket partially covering it and what he believed to be two cased long-arm weapons. Upon opening the cases while he was still inside the van, Officer Boschee found two shotguns. Officer Boschee also observed a guitar case, several knives and a hatchet when he was in the van.

Officer Smith approached the van on the driver's side and, with the window at least partially rolled down, observed the stock of a long-arm weapon between the front seats. When Officer Smith reached into the van to retrieve this gun, he observed another shotgun, this one being sawed off. Another long-arm gun was also located on the front floor of the van. Two of the guns were cased but Officer Smith testified at the suppression hearing that he unzipped the cases to observe the guns.

Appellant and Strother were taken to the Sioux Falls Public Safety Building and separately interrogated regarding the incident at the Yates home. These interrogations began approximately forty-five minutes after the van was stopped. According to Officer Smith, he informed appellant of his Miranda rights at the interrogation room.

Sometime after being read his Miranda rights, appellant, according to Officer Smith, requested a lawyer after being asked if he would like to make a written statement. Officer Smith stated that besides himself and appellant, Detective James McKelvey (who conducted the bulk of the interrogation on appellant) was present. Detective McKelvey testified that, although he had not personally advised appellant of his Miranda rights, he did ask appellant if he had been so advised, to which appellant responded yes, Officer Smith had so advised him. Detective McKelvey also testified that appellant never told him that he wanted to see a lawyer. During the course of the interrogation, appellant signed a consent to search his van and made certain oral statements regarding his participation in the Yates incident.

Appellant testified, however, that he informed Detective McKelvey and Officer Smith that he had previously retained a lawyer and wanted to speak with him.[2] This request, says appellant, occurred prior to being read his Miranda rights at the Public Safety Building and before he signed the consent to search form with regard to

<hr>

1. See Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. Appellant had retained court-appointed counsel in December of 1980 in connection with a disorderly conduct charge.

his van or making any inculpatory oral statements. Appellant further denied that anyone read him his *Miranda* rights at the scene where the van was stopped. Appellant also testified that he did not sign the consent to search form voluntarily as the authorities present threatened to arrest his wife on charges of withholding evidence concerning another crime if he did not sign. Detective McKelvey denied this. Appellant also stated at the suppression hearing that he was at the Public Safety Building about two hours before his *Miranda* rights were read to him.

## ISSUES

### I.

Did the trial court err in finding that there was probable cause for Officer Boschee to stop appellant's van? We hold that it did not.

### II.

Did the trial court err in finding that the seizure of the weapons observed in appellant's van was not in violation of the Fourth Amendment? We hold that it did not.

### III.

Did the trial court err by finding that certain oral statements by appellant were voluntary and made subsequent to being advised of his *Miranda* rights? We hold that it did not.

### IV.

Was the trial court erroneous in refusing to adopt appellant's proposed jury instruction concerning the defense of duress? We hold that it was not.

### V.

Was the trial court erroneous in not granting appellant's motion for acquittal relating to the aggravated assault charge? We hold that it was not.

---

**3.** At this suppression hearing, the trial court received testimony from Officer Boschee, Offi-

## DECISION

### I.

Subsequent to a suppression hearing,[3] the trial court entered the following finding of fact: "There was probable cause for Officer Boschee to stop [appellant's] van on the evening of January 5, 1981." Appellant claims that this finding is clearly erroneous. SDCL 15–6–52(a); *In re Estate of Hobelsberger*, 85 S.D. 282, 181 N.W.2d 455 (1970).

As previously stated, Officer Boschee stopped appellant's van based upon the police radio report of a white van, with a spare-tire rack on the rear, being used by individuals suspected of burglary at the Yates home. Appellant's van matched this description. In *State v. Burkman*, 281 N.W.2d 436, 439–440 (S.D.1979), this Court stated (citations omitted):

The test for probable cause is simply: Were the actions of the suspect, viewed in the context of the attendant circumstances, such that they would lead a man of ordinary care and prudence to believe, or to entertain a strong suspicion, that the person was engaged in criminal activity?

▪ The Yates residence is approximately three miles from where appellant's van was stopped. Officer Boschee heard the radio report describing the van and the individuals involved in the Yates incident at approximately 10 p. m.; he first observed appellant's van approximately 30 minutes later and proceeded to follow it for five minutes before pulling it over. Although Officer Boschee testified that while he was following the van it did not commit any moving violations, the van did go through several alleyways which appeared to be evasive actions and an escape maneuver.

Officers are not required to know facts sufficient to prove guilt, but only knowledge of facts sufficient to show probable cause for an arrest or search. These are factual and practical considerations of

cer Smith, Detective McKelvey, appellant, Strother and several others.

everyday life on which reasonable and prudent men, not legal technicians, act. Probable cause exists when the facts and circumstances within the officer's knowledge and information warrant a man of reasonable caution in the belief an offense has been or is being committed. *State v. Hermandson*, 84 S.D. 208, 213–214, 169 N.W.2d 255, 258–259 (1969) (citations omitted). We hold that the trial court was correct in finding that probable cause existed for Officer Boschee to stop the van in question.

## II.

Appellant secondly contends that the trial court was clearly erroneous by entering the following finding of fact at the conclusion of the suppression hearing: "That incident to [the] stop [of appellant's van] and the arrest that followed, Officer Boschee had the right to seize the sawed-off shotgun and the two cased firearms which were in plain view of himself and Officer Conrad Smith."

█ No search warrant had been obtained for the van when it was stopped. Thus, one or more of the Fourth Amendment exceptions must apply for the seizure of the firearms to be constitutional. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967).

The legalities of the plain view doctrine are aptly expressed in *State v. Watkins*, 89 S.D. 661, 665–666, 237 N.W.2d 14, 17 (1975), citing *Coolidge v. New Hampshire*, 403 U.S. 443, 465–466, 91 S.Ct. 2022, 2037–2038, 29 L.Ed.2d 564, 582–583 (1971) (emphasis in original):

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being the normal concomitant of any search, legal or illegal."

. . . .

"The doctrine [of plain view] serves to supplement the prior justification— whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason *for being present unconnected with a search directed against the accused * *.*"

█ In this case, the trial court reasoned that when Officers Boschee and Smith looked into the van and made their respective observations, *that* constituted a search incident to a lawful arrest. During that search, then, the firearms were observed; thus, those items were seized under the plain view doctrine. There can be little dispute that the officers here had the right to search the van after it was stopped. As this Court stated in *State v. Anderson*, 316 N.W.2d 105, 107 (S.D.1982): "Police with probable cause to believe that an automobile which they have stopped contains contraband or evidence of a crime may search the vehicle without a warrant. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925)."

As previously discussed, the officers on the scene had probable cause to believe that appellant's van had been recently used in connection with a burglary; as such, their search of the van was incident to a lawful arrest and, during that search, the weapons in plain view were properly seized. We hold that the trial court did not err in admitting the seized weapons into evidence.

## III.

█ Third, appellant contends that the trial court was clearly erroneous when it found "[t]hat [appellant's] oral admissions to Officer Conrad Smith and Detective James McKelvey at the Sioux Falls Police Department on the night of the incident were voluntarily made by [appellant] after he had been fully advised of his rights in accordance with the *Miranda* warnings." Appellant admitted to the attending au-

thorities that he and Strother were in the Yates home the night in question and had gone there for the purpose of committing a burglary. *Miranda* stands for the proposition, inter alia, that if a defendant requests an attorney, all interrogation of that defendant must cease until access to an attorney is provided. *See also Rhode Island v. Innis*, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980); *State v. Cody*, 293 N.W.2d 440 (S.D.1980).

■ Appellant's testimony indicates that his requests for legal counsel went unheeded while the testimony of Officers Boschee, Smith and Detective McKelvey indicates that appellant's *Miranda* rights were fully effectuated. *See* FACTS, supra. Confronted with this divergence in testimony, the trial court accepted the version given by the police and, accordingly, entered the aforementioned finding of fact. Under the clearly erroneous standard of review, SDCL 15–6–52(a), this Court's function is to determine whether the trial court's finding is clearly against the weight of testimony. *State v. Lewis*, 90 S.D. 615, 244 N.W.2d 307 (1976). There being evidence in the record to support the trial court's finding, we find no error.

### IV.

■ Appellant maintains that the trial court erred by refusing to adopt his following proposed instruction: "A person may not be convicted of a crime when he engaged in conduct because of the use or threatened use of unlawful force upon him." [4] The trial court rejected this instruction on two grounds: defective form and unsupported by the facts. A trial court must present only those issues to the jury which are supported by competent evidence and set forth the applicable law. *Wolf v. Graber*, 303 N.W.2d 364 (S.D.1981); *see State v. Fox*, 313 N.W.2d 38 (S.D.1981); *State v. Poss*, 298 N.W.2d 80 (S.D.1980).

South Dakota Pattern Jury Instructions, vol. II, Criminal, § 2–14–3 states the recommended form for this type of instruction:

A person may not be convicted of a crime based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person which force or threatened use thereof a reasonable person in his situation would have been unable to resist.

The use or threatened use of force which will excuse the commission of the criminal conduct must be present and immediate and of such a nature as to induce in the defendant's mind the well-grounded apprehension of imminent death or serious bodily injury if the act is not done. Threat or fear of future injury is not sufficient. There must be no reasonable opportunity for the defendant to escape the danger without committing the crime. If you have a reasonable doubt whether or not the defendant committed the act with which he is charged under the use or threatened use of force as it has been defined, you must find him not guilty.

■ The testimony of appellant is to the effect that Strother was the instigator of the crime and that he (appellant) was reluctant to participate. A shotgun was discharged by Strother prior to the burglary while he and appellant were riding in the van with appellant driving. It is unclear, however, as to whether the firing of the gun was accidental or used to intimidate appellant. Pertinent, we believe, is the fact that appellant could have avoided participating in the burglary by driving away when Strother left the van, alone, to purchase some shotgun shells at a local drugstore. Moreover, it appears that appellant had several opportunities to leave the scene of the burglary, had he so desired, subse-

---

**4.** The authority for appellant's instruction is found in SDCL 22–5–1, which states:

A person may not be convicted of a crime based upon conduct in which he engaged because of the use or threatened use of unlawful force upon him or upon another person, which force or threatened use thereof a reasonable person in his situation would have been lawfully unable to resist.

quent to he and Strother entering the Yates residence. The facts simply do not support appellant's proposed instruction and, thus, we hold that the trial court was not erroneous in refusing to adopt same.

## V.

Appellant lastly contends that the trial court erred by not granting his motion for acquittal relating to the aggravated assault charge and proceeding to instruct the jury on the aggravated assault charge. Essentially, appellant argues that the facts do not support the charge. In this regard, SDCL 22–3–3.1 states:

> The distinction between an accessory before the fact and a principal, and between principals in the first and second degree, in cases of felony, is abrogated. Any person connected with the commission of a felony, whether he directly commits the act constituting the offense or aids and abets in its commission, though not present, must be prosecuted, tried, and punished as a principal.

■ The test of participation in South Dakota was stated in *State v. Schafer*, 297 N.W.2d 473, 476 (S.D.1980): "When the evidence indicates that the defendant was more than a passive bystander and knowingly did something to assist in the commission of a crime, then his status changes [to that of a principal]." *See State v. Peck*, 82 S.D. 561, 150 N.W.2d 725 (1967). Mere presence alone by an individual at the scene of a crime is not sufficient to make him a participant, but presence combined with other facts and circumstances may establish him as a participant to the offense. *State v. Schafer*, supra; *State v. Anderberg*, 89 S.D. 75, 228 N.W.2d 631 (1975).

■ Aside from appellant's presence at the Yates home, there is evidence in the record establishing that appellant (a) drove the van to and from the Yates home, with Strother as a passenger, (b) carried a shotgun during the burglary, (c) assisted Strother in locating David Yates (David testified that both appellant and Strother were armed when they found him trying to escape through the garage door), and (d) according to Mrs. Thorson, an individual wearing a blue coat went into a rear bedroom of the house (it being later established that appellant was wearing a blue coat while in the home). Bound by this evidence, we hold that the trial court did not err in denying appellant's motion for acquittal or submitting an instruction on the aggravated assault charge.

The judgment of the trial court is affirmed.

DUNN and MORGAN, JJ., concur.

WOLLMAN, C. J., concurs specially.

FOSHEIM, J., dissents.

WOLLMAN, Chief Justice (concurring specially).

If the record were clear that the officers continued to interrogate Johnson after he had expressed his desire to consult with an attorney, I would join in Justice Fosheim's dissent. As it is, however, the record indicates that Johnson made his incriminating statements before he made the statement about wanting to consult with an attorney. Accordingly, there appears to have been no violation of the rule in *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), and therefore I join in the majority opinion.

FOSHEIM, Justice (dissenting).

Appellant's Fifth Amendment rights, as interpreted by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), were violated.

The majority states that appellant testified he requested a lawyer and that Officer Smith also testified appellant requested a lawyer. The interrogation, however, did not stop. The majority decision then concludes that based on the testimony of Officers Boschee, McKelvey *and* Smith, appellant's *Miranda* rights were fully effectuated and, confronted with a divergence in testimony, the trial court's findings on voluntariness were not clearly erroneous. The facts

recited by the majority clearly contradict that conclusion. While Officer Smith's testimony admittedly is fuzzy, the State has the burden of proving, beyond a reasonable doubt, that defendant waived his right to counsel. *State v. Cody*, 293 N.W.2d 440 (S.D.1980). Officer Smith's testimony corroborates appellant's testimony that appellant asked for his attorney. And, Officer Smith's testimony does not refute appellant's testimony that appellant asked for his attorney at the outset of the interrogation and that after appellant requested his attorney's presence the interrogation continued in the absence of counsel. The testimony of Officer Smith, coupled with appellant's testimony, clearly leaves considerable doubt as to whether appellant waived his right to counsel.

Furthermore, the majority fails to discuss whether appellant waived his right to counsel. In *Edwards*, the United States Supreme Court was not only careful to point out that waiver of counsel must be voluntary *and* knowing and intelligent but that "additional safeguards are necessary when the accused asks for counsel." *Id.* at 484, 101 S.Ct. at 1884. The *Edwards* decision is an implementation of additional safeguards. It holds that waiver of the right to counsel can only be shown by facts proving *no interrogation*, that is no "communication, exchanges, or conversations with police" not *initiated* by the appellant. *Id.* at 484–85, 101 S.Ct. at 1884–85. Under this standard, and the facts of this case, the State has failed to prove a knowing and intelligent waiver of the right to counsel.