**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Delbert R. PETERSON, Defendant and Appellant.**

**No. 15375.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 15, 1987.

Decided June 3, 1987.
Rehearing Denied July 13, 1987.

Craig M. Eichstadt, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., on brief.

Catherine G. Ortner of Ortner and Ortner, Hot Springs, for defendant and appellant.

MORGAN, Justice.

This is an appeal from a judgment of conviction for possession of marijuana and possession of drug paraphernalia. We affirm.

On September 1, 1985, a state trooper observed appellant Delbert R. Peterson's automobile fishtailing and throwing up dust. The trooper stopped the car and spoke to Peterson while Peterson remained in his car. During the conversation, the trooper noticed a strong odor of alcohol coming from inside the vehicle. The trooper took Peterson back to his patrol car and again noticed a strong odor of alcohol emanating from Peterson. The trooper called for assistance and an officer of the Hot Springs police department responded. According to the trooper, the officer radioed instructions to hold the individual because the officer wanted to check him out "for a possible 10–80." (10–80 is a code number referring to narcotics information or involvement.) The officer testified that he did not know whose. vehicle had been stopped when he first heard the trooper's radio communication; according to his standard procedure, he would have backed up the trooper on any traffic stop.

When the officer arrived on the scene, the trooper asked him to conduct a plain-view search of Peterson's vehicle, looking for open containers. In conducting the search, the officer first advised the two passengers who were in the car to get out so that he could look in the driver's reach for open containers. The officer then found an open beer can, which was empty, on the floor board. He placed the beer can on the roof of the car and looked into the

car again. This time he entered the confines of the vehicle and found a roach clip in a console between the two front seats; the roach clip was in plain sight once the officer entered the vehicle. As a result of this discovery, the trooper arrested Peterson for possession of drug paraphernalia. The trooper did a pat down search of Peterson and found a hollow stone, which is considered to be drug paraphernalia. The two officers also conducted a more thorough post-arrest search of Peterson's car and found more drug paraphernalia and some marijuana in the glove compartment.

Prior to trial, Peterson moved to suppress all evidence obtained during the police searches. The trial court denied the motion, ruling that the odor of alcohol on a driver's breath is sufficient to warrant an investigation to determine whether the driver is under the influence of alcohol, as well as to investigate possible open container violations. The trial court also concluded that once the officer observed the open beer can, there was probable cause for an arrest and a contemporaneous search of the automobile incident to the arrest. Following a court trial, Peterson was convicted on the marijuana possession and drug paraphernalia charges.

The issue on appeal is whether the police officers were justified in conducting the warrantless searches of Peterson's vehicle. Peterson argues that the odor of alcohol on one's breath and about one's person does not constitute the probable cause necessary to justify the warrantless search of an automobile. We disagree.

■ The Fourth Amendment proscribes all unreasonable searches and seizures, and it is a cardinal principle that searches conducted without the prior approval of a judge or magistrate are per se unreasonable, subject to only a few specific exceptions. *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982). One such exception is the "automobile exception." *California v. Carney*, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). It is well settled that an officer having probable cause to believe that an automobile which he has stopped contains contraband or evidence of a crime may search the vehicle without a warrant under the automobile exception. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *State v. Johnson*, 320 N.W.2d 142 (S.D. 1982); *State v. Burkman*, 281 N.W.2d 436 (S.D.1979).

■ Courts in other jurisdictions have also ruled that the detection of odors alone, which trained police officers can identify as being illicit, constitutes probable cause to conduct a warrantless search of an automobile for further evidence of crime. *See United States v. Haley*, 669 F.2d 201 (4th Cir.1982); *cert. denied* 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1982) (odor of marijuana); *City of St. Paul v. Moody*, 309 Minn. 104, 244 N.W.2d 43 (1976) (odor of paint fumes); *State v. Pierce*, 347 N.W.2d 829 (Minn.App.1984) (odor of alcohol). The Minnesota Supreme Court has ruled that an officer's detection of the odor of alcohol coming from an automobile gave him probable cause to believe that a search of the vehicle would reveal open bottles or cans of alcohol; therefore, the officer was justified in making a warrantless search of the passenger compartment of the vehicle. *State v. Schinzing*, 342 N.W.2d 105 (Minn.1983). We find these authorities to be persuasive. The trooper's detection of the odor of alcohol coming from Peterson and the automobile gave him probable cause to believe an offense had been committed, thereby allowing him to search the passenger compartment for evidence of an open container violation. A search warrant was unnecessary under the automobile exception. *Chambers, supra; Carroll, supra.*

■ Peterson also contends that once the officer found the open beer can, his search should have come to a halt since an open liquor container was the object of the search. However, "[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search." *United States v. Ross*, 456 U.S. at 825, 102 S.Ct. at 2173, 72 L.Ed.2d at 594 (emphasis added);

*Estep v. Commonwealth,* 663 S.W.2d 213 (Ky.1983). In *Ross,* the United States Supreme Court approved the continued warrantless search of the interior and trunk of an automobile after an illegal drug had already been found in the vehicle. The Court concluded that "[t]he scope of a warrantless search based on probable cause is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause." *United States v. Ross,* 456 U.S. at 823, 102 S.Ct. at 2172, 72 L.Ed.2d at 593. Likewise, in the present case it was reasonable for the officer to continue his search for open containers, especially since the beer can that he found at first glance was empty. There may well have been other open containers within the driver's reach. Here, the roach clip was in plain sight in a console between the two front seats, easily within Peterson's reach. Therefore, the officer's search was clearly valid under *Ross.*

During the final phase of the officers' search, after Peterson had been arrested, the officers found more drug paraphernalia and some marijuana in the glove compartment of Peterson's car. This search was valid as a search incident to arrest. When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile; the police may also examine the contents of any containers, including the glove compartment, found within the passenger compartment. *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981); *State v. Rice,* 327 N.W.2d 128 (S.D.1982). A search incident to arrest is distinguishable from police inventory searches, such as that conducted in *State v. Opperman,* 247 N.W.2d 673 (S.D.1976).

Finally, we are troubled by the "10–80" radio transmission from the officer to the trooper and the concerns that it raises. However, the record indicates that the trooper detected the odor of alcohol coming from Peterson's vehicle prior to his call for assistance. Therefore, the trooper had probable cause to search Peterson's car before he received the officer's 10–80 message. The record also indicates that it was standard procedure for the officer to back up the trooper on all traffic stops, just as he did in this case. Under such circumstances, the officer's search of Peterson's vehicle was valid and cannot be considered merely a pretext for a drug investigation. The trial court properly denied Peterson's motion to suppress the evidence.

The judgment of the trial court is affirmed.

WUEST, C.J., and MILLER, J., concur.

HENDERSON and SABERS, JJ., dissent.

HENDERSON, Justice (dissenting).

Beginning. There must always be a beginning to the violation of a constitutional right. We had a beginning here. It was an officer who stopped the car because it fishtailed and threw up dust. A warning ticket was given for this type of driving. No prosecution ensued.

Enter an odor of alcoholic beverage on the driver. Conceptualize that driver can be charged with driving while under the influence of intoxicants. Here, however, no such charge was lodged and the driver apparently passed all sobriety tests. Insufficient evidence; no prosecution.

Enter, now, the possible charge of open container(s) in the stopped vehicle. SDCL 35–1–9.1. No such charge was prosecuted. Testimony indicates that there was a "minuscule" amount of beer in the can. State advocates that the beer can "was not completely empty." However, Officer Selves has a sworn affidavit in the record reflecting that the beer can was "empty." There are references, in the transcript of the combined preliminary hearing and suppression hearing, to an "empty beer can" on at least two pages thereof. It is understandable that State did not see fit to charge driver with an open container violation. Conclusion: Insufficient evidence; no prosecution. Per the court below, however, the conclusion was reached that the open, empty beer

can gave probable cause to arrest and to then search the automobile.

Thus, in reviewing, we see that State's case on any one of the above charges did not materialize. Instead, we have before us, for review, a motion to suppress on a warrantless search of a vehicle, arising out of the above scenario, pertaining to drugs and drug paraphernalia. Why? Where do the drugs enter the picture? A simple explanation may be found, as reflected by the "troubled" writing (see phrasing of majority opinion, last full paragraph) with respect to the "10–80" radio transmission. Officer Griswold told Trooper Selves to *hold* the individual because he wanted to come and check him out for a possible "10–80." Defendant heard this radio transmission and wanted to know what it was all about and Trooper Selves said "Don't concern yourself." Trooper Selves testified that even he had to look up what "10–80" meant because it was seldom used but that it pertained to "any narcotic information."

We are confronted with a situation where officers—inceptually—undertook a narcotics investigation without benefit of a warrant and without benefit of any facts to substantiate that narcotics were either in the vehicle or on the persons in the vehicle. There are legal views, of a conceptually popular belief, that this represents zeal in law enforcement to be blessed in a court of law. However, appellate courts are confronted with protecting the constitutional rights of citizens. Fourth Amendment rights are not for supposed first-class citizens or imagined second-class citizens; they are for all citizens. And they are not second-class rights to be dispensed at the whim of either zealous officers or courts believing that it is their duty to uphold law enforcement intrusions so long as the intrusions are, in the eyes of the law enforcement officers, to protect society. Our nation was founded on *individual* rights.

Long have I written, in this Court, to try to protect the citizens of this state on South Dakota highways from unreasonable, unlawful, and unconstitutional intrusion.[1] It has been a lonely road. When you deprive a person of his constitutional rights, you crush his freedom of spirit and you strike fear in his entire countenance.[2] Our courts must protect the citizenry, lest the indispensable freedom guaranteed by the Fourth Amendment is stripped away. Apparently, I am not alone in this belief. Reference is made to a five-four decision in *New York v. Class*, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81 (1986).

In *Class*, we had the seizure of a gun, and the issue before the United States Supreme Court was: Should the gun be suppressed? A police officer, in *Class*, stopped a car for traffic violations and tried to get a peek at the vehicle identification number, a/k/a VIN. The VIN must be placed in the plain view of someone outside of the automobile. An officer reached inside the car to remove some dashboard papers which obstructed his view of the VIN. But as he so moved his body, he noticed a gun protruding underneath the driver's seat and he seized the gun. The suppression issue eventually was heard by the United States Supreme Court. Justice O'Connor wrote the majority opinion, holding for the government officials, but emphasized that federal law requires the VIN be placed in the plain view of someone *outside the automobile*. Justice O'Connor called the VIN "a significant thread in the web of regulation of the

---

1. Officers, public officials "holding" people is reminiscent of the Nazi Party, a fanatical political party which took over Germany and then, one by one, invaded and occupied several European countries. This eventually triggered the entry of America into World War II. The Nazis "held" people—without process.

2. *See State v. Anderson*, 359 N.W.2d 887,893 (S.D.1984) (Henderson, J., concurring in result); *State v. Auen*, 342 N.W.2d 236,241 (S.D.1984) (Henderson, J., dissenting); *State v. Anderson*, 331 N.W.2d 568,573 (S.D.1983) (Henderson, J., concurring in result). In *Anderson*, 331 N.W.2d at 573, I voiced my concern regarding the rights of the driving public:

> Erosions of liberty do not come in giant leaps, they come in miniscule encroachments often hidden to the trained and educated mind. Like a thief in the night, language can steal a liberty deeply ingrained in the fabric of the American way of life. I am afraid of each little encroachment on the liberty of my fellow Americans on the highway.

automobile." *Class*, 475 U.S. at ——, 106 S.Ct. at 964, 89 L.Ed.2d at 88.

But we do not have a VIN in this case or anything near to it by way of comparison. In the ending of her writing, Justice O'Connor points out that "our holding today does not authorize police officers to enter a vehicle to obtain a dashboard-mounted VIN when the VIN is visible from outside the automobile." *Id.*, 475 U.S. at ——, 106 S.Ct. at 969, 89 L.Ed.2d at 94. On behalf of the Court, she further wrote: "A citizen does not surrender all the protections of the Fourth Amendment by entering an automobile." *Id.*, 475 U.S. at ——, 106 S.Ct. at 965, 89 L.Ed.2d at 89 (citing *Delaware v. Prouse*, 440 U.S. 648,663, 99 S.Ct. 1391,1401, 59 L.Ed.2d 660,673 (1979); *Almeida-Sanchez v. United States*, 413 U.S. 266,269, 93 S.Ct. 2535,2537–38, 37 L.Ed.2d 596,600–01 (1973)). In the *Almeida-Sanchez* case, the Court reflected: "Automobile or no automobile, there must be probable cause for the search." 413 U.S. at 269, 93 S.Ct. at 2537–38, 37 L.Ed.2d at 600–01.[3]

Let us go back to the facts, to establish a time frame, for the state of mind of the officers. By State's own brief, it admits that Officer Griswold was searching for evidence. And State justifies all of this by stating that Officer Griswold merely stuck his head inside the car door. Gentlemen and ladies of the law, this is an intrusion. And it was an unlawful intrusion. Below, the court, *inter alia*, found "Griswold had to enter the confines of the vehicle in order to view the alligator clip."[4] State is clever by a concept of "minimally intrusive." State says in its brief: "As indicated above, the search involved only the intrusion of the officer's head into the passenger compartment." (The plain view doctrine is moored upon peering from outside the vehicle into the inside of the vehicle; the doctrine does not arise from any officer thrusting all or part of his body into the vehicle, and then proceeding to have a "plain view" look.) This conviction should be reversed based upon the initial search.

From the beginning, the officers were seizing individuals and an automobile because of the belief of narcotics being involved. Yet, not one fact had surfaced to establish a basis for the belief. Once Officer Griswold was *unlawfully* in the automobile, he observed the feathered alligator roach clip. It was not in plain view from outside of the automobile. Only an investigation within the automobile, after an intrusion, revealed this clip. Under *New York v. Class*, 475 U.S. at ——, 106 S.Ct. at 966–68, 89 L.Ed.2d at 91–93, the balancing test is discussed. The nature of the intrusion may be considered as opposed to the importance of the governmental interest promoted by the intrusion. Under all of the circumstances, in my opinion, there was an unlawful seizure. Concededly, there was certainly a reasonable suspicion for a stop. Erratic driving behavior was articulable suspicion to stop defendant's car. Thereafter, however, these two law officers violated defendant's Fourth Amendment rights. If these two officers had probable cause to believe that the car contained evidence of a crime,[5] a lesser expectation of privacy would prevail. But they did not have the requisite probable cause.[6]

---

**3.** In discussing probable cause, the United States Supreme Court wrote:

Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within their [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed.

*Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890 (1949) (brackets in original; footnote omitted) (quoting *Carroll v. United States,* 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 555 (1925)).

*See generally* 1 W. LaFave, *Search and Seizure* § 3.1 (2d ed. 1987) (where a historical discourse on probable cause appears).

**4.** No residual marijuana or narcotics was found on the alligator clip.

**5.** Recall: Officer Griswold (not at the scene) wanted a "hold" on the individual to have a 10–80 (narcotic) check.

**6.** We should not forget that this search was prefaced upon Officer Griswold's purely intuitional compulsion to conduct a "narcotics information" search. He could not have had *probable cause* to commence such an inquisition as it

It is vital that, under our scope of review, the findings of the court below are clearly erroneous. I hazard that they are. It seems that the court below concluded, as a matter of law, that an empty beer can, lying on a floorboard of an automobile, made the entire automobile vulnerable or open to a warrantless search. This is carrying a search of an automobile and a seizure of its contents into the realm of the "unreasonable." It is "unreasonable" search and seizures that the Fourth Amendment expressly prohibits.

SABERS, Justice (dissenting).

Peterson was stopped for Exhibition Driving. Officer Selves noticed the odor of alcoholic beverage on Peterson's breath which would allow the officer to look into the car and seize items in plain view. However, this incident went way beyond that point.

As indicated in the majority opinion, Peterson was placed in the patrol car. Officer Selves called for assistance. In doing so, Officer Griswold radioed instructions to hold the individual because he wanted to check him out "for a possible 10–80." As indicated, "a 10–80 is a code number referring to narcotics information or involvement." Officer Griswold testified "that he did not know whose vehicle had been stopped when he first heard the trooper's communication." If the members of this court believe that, there is a man in Brooklyn who has a bridge to sell them.

1. Officer Griswold clearly wanted to have Officer Selves hold Peterson so Griswold could search the car for "narcotics information."

2. Officer Griswold claimed he wanted the passengers (Peterson's friend was sitting in the right front seat with his girlfriend on his lap) to remove themselves from the car to do a "plain view

search within the driver's reach." This is pure fiction and an obvious pretense for an illegal search.

3. There is no such thing as a plain view search, only a plain view seizure. In other words, under certain circumstances, an officer can seize that which is in plain view. He cannot require people to remove themselves from a vehicle so that he can conduct a "plain view search or seizure" in and around the driver and passenger seat, the console, the glove compartment.

4. All items seized after the officer required the passengers to remove themselves from the vehicle were the result of an illegal search and seizure. (This includes the empty beer can, roach clip, and round hollow stone on the person of Delbert Peterson and the marijuana (one ounce plus) from the console or glove compartment.)

The majority opinion claims: " '[i]f probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of *every part of the vehicle and its contents* that may conceal the object of the search.' " (emphasis added) This language should not apply to the facts of this case because probable cause did not exist and did not justify this type of search. If it does, it is wrong. *See United States v. Ross*, 456 U.S. 798,825, 102 S.Ct. 2157, 72 L.Ed.2d 572,594 (1982).

Under these circumstances, the officer's search of Peterson's vehicle was invalid and must be considered merely a pretext for a drug investigation. The trial court should have granted Peterson's motion to suppress the evidence. The judgment of the trial court should be reversed.

is undisputed that he did not know whose vehicle Officer Selves had stopped. The Fourth Amendment probable cause mandate is designed "to safeguard citizens from rash and unreasonable interferences with privacy and from unfounded charges of crime." *Brinegar v. United States*, 338 U.S. 160,176, 69 S.Ct. 1302,1311, 93 L.Ed. 1879,1890–91 (1949). *See* 1 W. LaFave,

*Search and Seizure* § 3.2(a) (2d ed. 1987). In this situation, only the existence of probable cause could legitimize the search. *See United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572,594 (1982); 1 W. LaFave, *supra* § 3.1(a), at 542–43. As neither Officers Selves nor Griswold had probable cause, the search was improper.