**STATE of South Dakota, Plaintiff and Appellant,**

v.

**John A. ZACHODNI and Linda W. Zachodni, Defendants and Appellees.**

**Nos. 16970, 16990.**

Supreme Court of South Dakota.

Argued Sept. 17, 1990.

Decided Feb. 13, 1991.

Craig M. Eichstadt, Asst. Atty. Gen.,
Pierre, for plaintiff and appellant; Roger

A. Tellinghuisen Atty. Gen., Pierre, on brief.

Steve Miller, Sioux Falls, for defendant and appellee, John A. Zachodni.

Sidney B. Strange, Sioux Falls, for defendant and appellee, Linda W. Zachodni.

SABERS, Justice.

Trial court suppressed drug evidence on the ground that warrantless vehicle search violated Fourth Amendment. State appeals.

## FACTS

On August 5, 1989, South Dakota Highway Patrol Trooper John Norberg noticed several motorcycles, a black pickup truck and a red van parked on the westbound shoulder of Interstate 90 near Sioux Falls. He pulled up behind the red van and got out to investigate.

The black pickup belonged to John and Linda Zachodni, who were on their way to a motorcycle rally in Sturgis, S.D. when a mechanical failure in one of the cycles ahead of them caused the procession to pull off the road.

Linda was sitting on the passenger side of the pickup cab with the door open when Trooper Norberg walked by and saw an open beer can on the cab floor. Norberg picked it up and noted a small amount of beer. Norberg asked for and obtained John's and Linda's driver's licenses and the vehicle registration, and separately took the two back to his patrol car, where he administered the Preliminary Breath Test (PBT). The tests showed that John, the

driver, had not been drinking but that Linda had. While Linda was in the patrol car, Norberg noticed that her pupils were constricted, that she seemed talkative and that she used expansive hand gestures.[1] At around the same time, another trooper, Olson, arrived on the scene. Olson observed in the red van a mirror with white powder residue on it, which he assumed to be cocaine, and he immediately informed Norberg.

Norberg decided not to place Linda under arrest for violating South Dakota's "open container" law, SDCL 35–1–9.1, but instead issued her a uniform traffic citation with a fine assessed and payable by mail.

Norberg held onto both driver's licenses and the vehicle registration. When John requested their return, Norberg asked him whether there were drugs in the pickup. John denied it. Norberg said, "Then you wouldn't mind if I looked in your truck?" John replied, "Nope."

When Norberg approached the pickup, he saw Linda again seated in the passenger seat, and he noticed that there were a number of small scabs on her legs. He took this as another possible indication of drug use.[2]

Norberg began his search with Linda's purse, where he found a small amount of marijuana in a plastic baggie. There was conflict in the testimony about whether Linda consented to this search.

Next Norberg searched the cab of the pickup without result.

Lastly, Norberg came upon John in the cab of the pickup "doing something with" a

---

**1.** Norberg testified: "The first thing that I noticed were her eyes. Her eyes, her pupils in her eyes were very constricted. Almost nearly pinpoint at this time. I took a quick look in my rearview mirror and compared mine and her eyes. Her pupils were constricted and then I started being a little more attentive and she was very talkative. . . . A great amount of hand waving." Transcript of Suppression Motion Hearing at 14–15.

"Pupillary constriction" is a classic symptom of opioid intoxication. The opioid classification includes such drugs as heroin, morphine and methadone. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 142 (3d ed. 1980). The use of cocaine or

stimulants in the amphetamine category can produce symptoms of "elation, grandiosity, loquacity . . . and pressured speech." *Id.* at 146–147.

**2.** "Intoxication with intravenous administration of high doses of cocaine may be associated with . . . a sensation of insects crawling up the skin (formication) or seeing insects." American Psychiatric Association, *supra* note 1, at 146. Norberg's testimony that cocaine users are known to scratch and dig at their skin to shoo away these "coke bugs" is reasonable, given that "hypervigilance" is also a symptom of cocaine intoxication. *Id.* at 147.

blue soft vinyl suitcase Norberg had not seen before. Although John parted with this suitcase reluctantly, Norberg searched it after breaking its padlock with pliers. Inside, Norberg discovered 750 grams of cocaine, four hits of LSD, marijuana, various drug paraphernalia and rolls of numbered bills.

John, Linda, and three others were arrested and taken to the Minnehaha County Jail. Two additional vials of cocaine were discovered in Linda's purse during an inventory search.

John and Linda were indicted on August 10, 1989, on two counts of possession of controlled drugs and two counts of possession with intent to distribute in violation of SDCL 22–42–5 and 22–42–2. Both John and Linda moved to suppress all physical evidence gathered and all oral statements made as a result of the purse and suitcase searches. The trial court granted the motions to suppress and the State appeals.

1. DID THE OPEN CONTAINER VIOLATION JUSTIFY THE WARRANTLESS SEARCH OF THE VEHICLE AND ITS CONTENTS?

The Fourth Amendment to the U.S. Constitution and Article VI, § 11 of the S.D. Constitution generally require searches of persons and places to be authorized by warrant and require such warrants to be based on probable cause to believe that the search will yield contraband or other evidence of a crime. *Schneckloth v. Busta-monte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967); *Johnson v. United States*, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *State v. Peterson*, 407 N.W.2d 221, 223 (S.D.1987).

There are, however, a number of recognized exceptions to this rule. *United States v. Ross*, 456 U.S. 798, 824–825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982). All

of these exceptions dispense with the warrant requirement for valid searches under certain circumstances. A few of the exceptions even dispense with or modify the underlying probable cause requirement itself.

Based on increased mobility and decreased privacy expectations in a vehicle, both the United States and the South Dakota Supreme Courts have held that

> when a law enforcement officer stops a vehicle, and the officer has probable cause to believe the vehicle contains contraband, the vehicle may be searched without a warrant. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Peterson, [supra].* The search may include the interior of the car as well as the trunk. *United States v. Ross, [supra]; Peterson, supra.*[3]

*State v. Pfaff*, 456 N.W.2d 558, 561 (S.D. 1990). Under the vehicle exception, the Constitution permits a search to proceed without a warrant, but not without probable cause.

■ We affirm the trial court's determination in its Conclusions of Law that the open beer can Norberg saw on the cab floor of the pickup did not supply probable cause for the search of the purse and the suitcase. Unlike the trial court, however, we find it unnecessary to reach the question of whether the open beer can *could have* supplied probable cause for either of those searches. In point of fact, it did not. When Norberg saw the can and determined it had been recently emptied, he chose not to search the pickup further, but to administer the PBT to John and Linda. John passed the test, Linda did not, and Norberg wrote Linda a citation. That concluded the open container portion of the investigation of the pickup and its occupants, and there is nothing in the record to indicate that subsequent searches of the truck, the

---

**3.** As noted in my dissent in *Peterson*, 407 N.W.2d at 227 (Sabers, Justice, dissenting), the warrantless search of a vehicle may extend no further than the underlying probable cause extends. Thus probable cause of drug possession might extend to a locked trunk, but not proba-ble cause of an open container violation. In no event may probable cause of one crime be used as a pretext to justify searching an area of the vehicle where no evidence relevant to *that crime* could possibly be found.

purse or the suitcase were in any way connected with the open beer can.

## 2. WAS THERE CONSENT TO THE WARRANTLESS SEARCH OF THE PURSE?

Consent to be searched constitutes another exception to the Fourth Amendment warrant requirement. Once consent to a search has been voluntarily tendered to the State's agents, not only is a warrant unnecessary, but so is probable cause. *Schneckloth*, 412 U.S. at 219, 93 S.Ct. at 2043–2044.

The presence or absence of consent to a search is a question of fact. *Id.*, 412 U.S. at 227, 93 S.Ct. at 2047–2048. As such, the trial court's resolution of that question will be upheld unless our examination of the evidence, construed in a light most favorable to the trial court's finding, convinces us that the finding was clearly erroneous. *State v. Pfaff*, 456 N.W.2d at 560; *State v. Woods*, 374 N.W.2d 92, 98 (S.D.1985), *cert. denied sub nom. Woods v. Solem*, — U.S. —, 110 S.Ct. 1952, 109 L.Ed.2d 314 (1990); *State v. Hall*, 353 N.W.2d 37, 40 (S.D.1984); *United States v. Brown*, 884 F.2d 1309, 1311 (9th Cir.1989), *cert. denied*, — U.S. —, 110 S.Ct. 732, 107 L.Ed.2d 750 (1990). *See also* SDCL 15–6–52(a).

The trial court determined that John consented to the search of the pickup. That consent did not include Linda's purse. It is true that "the consent of one who possesses common authority over premises or effects is valid against the absent, non-consenting person with whom that authority is shared" where there is "mutual use of the property by persons generally having joint access or control for most purposes[.]" *United States v. Matlock*, 415 U.S. 164, 170, 172 n. 7, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). A search may be valid even when the state's agents erroneously but "reasonably ... believe that the person who has consented" to the search possesses authority to do so. *Illinois v. Rodriguez*, — U.S. —, 110 S.Ct. 2793, 2800, 111 L.Ed.2d 148 (1990). That does not, however, describe the circumstances of this search. Linda was not absent from the scene of the alleged "consent." Nor does a husband have common authority or joint control over his wife's purse. It would have been unreasonable for Norberg to believe otherwise, and the record shows that Norberg did not, in fact, believe otherwise: he felt compelled to ask Linda's permission to search the purse even though John had already consented to a search of the truck.

There was disputed testimony about what transpired between Linda and Norberg immediately before Norberg searched Linda's purse. The trial court resolved that dispute against the State's version of events, finding that Linda did not consent to the search of her purse. We do not disturb that finding because it is not clearly erroneous. "Quite simply, this issue comes down to the trial court's judging credibility. It was in the position to observe the witness testifying, and we give due regard to its superior position to judge credibility." *State v. Pfaff*, 456 N.W.2d at 561 (*citing Langerman v. Langerman*, 336 N.W.2d 669 (S.D.1983)). Therefore, there was no consent to search the purse.

## 3. WAS THERE CONSENT TO THE WARRANTLESS SEARCH OF THE SUITCASE?

The State bears the burden of proving that consent to a search has been freely and voluntarily given. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983). While it is not necessary for the State to show that the consenting party knew of the right to refuse consent, such knowledge or lack of knowledge is one factor in the Court's judgment whether the State met its burden. *Schneckloth*, 412 U.S. at 227, 93 S.Ct. at 2048.

The State's burden is not met "by showing a mere submission to a claim of lawful authority." *Florida v. Royer*, 460 U.S. at 497, 103 S.Ct. at 1324. Particularly when the State has represented to the "consenting" party its authority to search with or without the party's consent, or

when the State has detained the "consenting" party through seizure of a driver's license or airline ticket, the party's failure to object strenuously and consistently to the search will not necessarily be dispositive. *See, e.g., Royer,* 460 U.S. at 501–503, 103 S.Ct. at 1326–1327, and *Bumper v. North Carolina,* 391 U.S. 543, 549 n. 14, 550, 88 S.Ct. 1788, 1792 n. 14, 20 L.Ed.2d 797 (1968). "The State must establish voluntariness by clear and convincing evidence that the search was the result of a free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied." *State v. Cody,* 293 N.W.2d 440, 450 (S.D.1980) (*citing State v. Kissner,* 252 N.W.2d 330 (S.D.1977) and *Gautreaux v. State,* 52 Wis.2d 489, 190 N.W.2d 542 (1971)).

 The State does not deny that John was unwilling to have the blue suitcase opened. Instead, the State cites *United States v. Brown,* 884 F.2d at 1312, for the proposition that an "unambiguous statement of consent" cannot be withdrawn later by mere reluctance to go through with the search. In *Brown,* however, the Ninth Circuit emphasized that without Brown's consent to be searched, "the brief detention of his bags would have in no way interfered with his travel," and that "Brown was informed that he was free to leave...." *Id.,* at 1310, 1311. In contrast, Norberg retained the driver's licenses and the motor vehicle registration of the Zachodnis at all times. In fact, it was when John requested their return that Norberg first asked to search the pickup. Under these circumstances, it was not clearly erroneous for the trial court to find that John's verbalized reluctance to allow the suitcase to be searched amounted to a withdrawal of consent to search the pickup—presuming that his earlier consent to search the pickup included the suitcase in the first place, an issue we need not reach.

Given the State's burden of proof and the facts of this case, we cannot say that the trial court was clearly erroneous in finding that John did not consent to the search of the suitcase.

## 4. WAS THERE PROBABLE CAUSE OF POSSESSION OR USE OF ILLEGAL DRUGS TO JUSTIFY THE WARRANTLESS SEARCH OF THE VEHICLE AND ITS CONTENTS?

The final issue is whether Norberg's warrantless search of the pickup was justified under the vehicle exception because he had probable cause to believe he would discover drug contraband. The trial court held that probable cause was lacking.

 Probable cause justifying a search is present where the facts found by the court or the magistrate would lead a reasonable and prudent person to believe it fairly probable that a crime had been committed and that evidence relevant to the crime would be uncovered by the search. *Illinois v. Gates,* 462 U.S. 213, 238–239, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Brinegar v. United States,* 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879 (1949); *Carroll v. United States,* 267 U.S. 132, 161–162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925); *State v. Burkman,* 281 N.W.2d 436, 439–440 (S.D.1979); *State v. Robinette,* 270 N.W.2d 573, 577 (S.D.1978). Although the evidence supporting a probable cause determination must be "more than a bare suspicion," *Brinegar,* 338 U.S. at 175, 69 S.Ct. at 1310, it need not establish proof beyond a reasonable doubt or even proof by preponderance. *Illinois v. Gates,* 462 U.S. at 235, 103 S.Ct. at 2330. Furthermore, each element of evidence need not be individually assessed for veracity and basis of knowledge. Rather, the probable cause determination is a function of "the totality of relevant circumstances." *Id.,* 462 U.S. at 230–31, 103 S.Ct. at 2328; *Massachusetts v. Upton,* 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984).

 The factual findings providing the elements of the probable cause determination "will be upheld unless clearly erroneous ... and ... clearly against the weight of the testimony." *State v. Pfaff,* 456 N.W.2d at 560 (*citing State v. Woods,* 374 N.W.2d at 98). Here the trial court's findings of fact must be upheld because they are not clearly erroneous and are supported by the record.

The trial court found that the Zachodnis were part of a procession on its way to a motorcycle rally in Sturgis, that Trooper Olson communicated to Norberg his discovery of possible drug paraphernalia in the van parked behind the pickup in the same procession, that Linda's pupils were constricted, that Linda appeared talkative to Norberg, that Linda appeared to Norberg to be gesturing expansively, that Linda had scab marks on her legs, and that, as the result of his training and experience, Norberg associated these behaviors and physical characteristics with the use of illegal drugs.[4]

■■ Whether these facts, taken together, add up to probable cause of drug possession is a separate question, and we review the trial court's determination under different standards of review. This court will overturn the trial court's decision to suppress or not to suppress if we find the trial court has exercised its discretion "to an end or purpose not justified by, and clearly against reason and evidence." *State v. Pfaff,* 456 N.W.2d at 561; *State v. Bartlett,* 411 N.W.2d 411, 414 (S.D.1987); *Herndon v. Herndon,* 305 N.W.2d 917, 918 (S.D.1981).

■■ Moreover, the definition of "probable cause" employed by the court is a question of law, not of fact or of discretion, and, as such, is fully reviewable de novo, with no "presumption attach[ing] to the determination of the circuit court." *State v. Byrd,* 398 N.W.2d 747, 749 (S.D.1986). *See also Hartpence v. Youth Forestry Camp,* 325 N.W.2d 292, 296 (S.D.1982).

■■ The trial court's probable cause determination as to the Zachodnis' possession of illegal drugs appears at Finding of Fact #XII:

Norberg's observations of Linda ... are not *conclusive* of Linda Zachodni's drug use. Further, this Court specifically finds as a fact that such observations, in light of Norberg's prior training and experience and in light of *possible noncriminal causes* thereof do not provide

probable cause for a belief that, at that time, Linda was either under the influence of controlled substances or, more to the point, was at the time in possession of same. (Emphasis added).

Even though denominated a "Finding of Fact," this is really a Conclusion of Law because its ultimate conclusion can be arrived at only by applying a rule of law. *Weltz v. Scotland School District,* 329 N.W.2d 131, 134 n. 2 (S.D.1983); *Hartpence,* 325 N.W.2d at 296. The rule of law in this conclusion is that facts cannot add up to probable cause unless they are "conclusive" of criminal activity or admit of no "possible non-criminal causes."

This is an error of law. It sets the standard for probable cause significantly higher than it actually is, and, for this reason, we must reverse. As a matter of law, facts need not be "conclusive" nor exclude all "possible non-criminal causes" to constitute probable cause. *Gates,* 462 U.S. at 238–239, 103 S.Ct. at 2332; *Brinegar,* 338 U.S. at 175–176, 69 S.Ct. at 1310–1311; *Burkman,* 281 N.W.2d at 439–440; *Robinette,* 270 N.W.2d at 577. As the United States Supreme Court summarized its decision in *Massachusetts v. Upton,* 466 U.S. at 733, 104 S.Ct. at 2088:

[The evidence] provides a substantial basis for the [probable cause determination]. No single piece of evidence is ... conclusive. But the pieces fit neatly together and, so viewed, support the ... determination that there was a 'fair probability that contraband or evidence of a crime' would be found[.]

■■ It is clear that Norberg had more than a bare suspicion on these facts and, considering the totality of all relevant circumstances in light of the applicable law, any reasonable and prudent person would have believed it fairly probable that a search of the Zachodnis' vehicle would uncover contraband. Even if the facts apparent to Norberg were not "conclusive" of illegal drug use, probable cause does not require such conclusiveness, and the court erred in so ruling. Therefore, the trial

---

4. The trial court also found that the blue suitcase mysteriously turned up in John's possession inside the cab of the pickup after the cab had been initially searched.

court based its ultimate decision to suppress on an incorrect legal standard of probable cause.

▮▮▮▮▮ The scope of a warrantless vehicle search based on probable cause "is no narrower—and no broader—than the scope of a search authorized by a warrant supported by probable cause.... The scope of a warrantless search of an automobile thus is ... defined by the object of the search and the places in which there is probable cause to believe that it may be found." *United States v. Ross*, 456 U.S. at 823–824, 102 S.Ct. at 2172. This Court applied the *Ross* rule in *State v. Peterson*, 407 N.W.2d at 224, in which alcohol on a driver's breath supplied probable cause to search for open containers anywhere within the driver's reach. A roach clip found during this search supplied probable cause to search for contraband anywhere in the car and marijuana and drug paraphernalia thus discovered in the glove compartment was admissible against the driver. Under the rule of *United States v. Ross* and *State v. Peterson*, once probable cause to search the Zachodnis' vehicle existed, it extended to anywhere in the pickup where the objects of the search might reasonably be found, including the purse and the suitcase.

Norberg had probable cause to believe that a crime was being committed in his presence and the items seized were therefore admissible. We reverse and remand for proceedings consistent with this opinion.

MILLER, C.J., WUEST and HENDERSON, JJ., and MORGAN, Retired Justice, concur.

HERTZ, Circuit Judge, acting as a Supreme Court Justice, not having been a member of the court at the time this case was considered, did not participate.