**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose JARAS, Defendant–Appellant.**

**No. 95–40113.**

United States Court of Appeals, Fifth Circuit.

Sept. 16, 1996.

Gary M. Polland, Houston, TX, Stephen S. Morris, Houston, TX, Roger Neil Moss, Lufkin, TX, for Jose Jaras, defendant-appellant.

Before DEMOSS and DENNIS, Circuit Judges, and DUPLANTIER, District Judge.*

PER CURIAM:

A member of the Court in active service having requested a poll on the reconsideration of this cause en banc, and a majority of the judges in active service not having voted in favor, rehearing en banc is DENIED.

RHESA HAWKINS BARKSDALE, Circuit Judge, with whom W. EUGENE DAVIS, EDITH H. JONES, JERRY E. SMITH, and EMILIO M. GARZA, Circuit Judges, join, dissenting:

Marijuana was found after an officer received consent to search a vehicle in which there were two occupants. Contrary to binding circuit precedent, the panel majority held the search unconstitutional. *United States v. Jaras*, 86 F.3d 383, 388–91 (5th Cir.1996) (Duplantier, J., dissenting). The issue at hand arises often. It is an issue that demands en banc review. I dissent from our court's refusal to do so. Among other things, left standing is an opinion which flies in the face of the plain wording of the Fourth Amendment (prohibits only "unreasonable" search and seizure), and our precedent.

At best, the panel opinion will confuse the law in this circuit governing consent (actual or implied) searches of vehicles; at worst, it will be read, albeit mistakenly, to impose new restrictions on such searches. True, consent searches are fact specific; but, at least the applicable law should be clear. This clarity is necessary not only for the courts ruling on the constitutionality of such searches but also, and most especially, for the law enforcement officers conducting them under attendant fast-paced, tense and stressful circumstances. That necessary clarity is muddied greatly by the opinion in this case.

Having been convicted for possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1), Jose Jaras contended on appeal, *inter alia*, that the district court erred by denying his motion to suppress evidence found during the warrantless search of his suitcase found in the trunk of an automobile driven by another (Salazar). The panel majority agreed, holding that Salazar (the driver) had no actual or apparent authority to consent to the search of Jaras' luggage, and that Jaras did not impliedly consent to the search. In so holding, it did not mention, among other things, that the trunk apparently was opened initially by Jaras. The panel majority disregards the overriding reasonableness standard of the Fourth Amendment; fails to consider binding circuit precedent concerning Salazar's authority to consent to the search of Jaras' luggage; and, in effect, abolishes the principle of implied consent, again contrary to binding circuit precedent.

I.

At the suppression hearing, only Officer Mitchell testified. After observing an automobile cross the solid white line on the road's shoulder, he stopped it because he suspected the driver, Salazar, might be intoxicated. Salazar explained that he swerved because he was attempting to eat while driving; that he was traveling to *Ohio* to visit a sick *friend;* and that he knew his passenger (Jaras) only as "Cheeto" and had known him for only a few weeks. But, when the Officer questioned Jaras, he stated that the two were on their way to *Illinois* to visit Salazar's *uncle*.

His suspicion aroused by these grossly inconsistent accounts, by the fact that Salazar knew his passenger only by a nickname, and by the unusual difference in their ages considering that they were unrelated yet traveling together, the Officer asked Salazar whether the vehicle contained any narcotics or contraband. Salazar's response—"not that I know of"—heightened the Officer's suspicion.

The Officer then requested Salazar's consent to search the vehicle, by asking if he "would mind if [the Officer] looked in [his]

* District Judge of the Eastern District of Louisiana, sitting by designation.

car"; Salazar consented by saying that "there would be no problem with that". The Officer testified that he asked to search the vehicle *and* its contents, noting that he "always ask[ed]" to search the "automobile and contents thereof".

Next, the Officer informed Jaras that Salazar had consented to the vehicle being searched, and asked him to exit. During this exchange, the trunk opened; the Officer believed that Jaras had opened it for him, using the trunk release in the glove compartment. The Officer closed the trunk; with it open, he was unable to see Jaras and Salazar, who were standing behind the car. Being alone, he felt that he needed to keep them under observation while he searched.

The search of the passenger compartment revealed nothing. The Officer then searched the trunk, which he reopened using the keys. The trunk contained two suitcases and a garment bag. He searched the garment bag, and Salazar told him that the suitcases belonged to Jaras. Jaras said nothing.

The Officer noticed that the suitcases were particularly heavy and asked Jaras what was inside them. Jaras responded that he did not know. He did *not* object to the Officer searching them. The Officer opened the suitcases and discovered bundles of what appeared to be marijuana, wrapped in cellophane. He then arrested Jaras and Salazar.

The district court denied Jaras' motion to suppress. It found that, prior to the search of Jaras' luggage, Jaras was informed that Salazar had consented to the vehicle being searched; that Jaras indicated to the Officer that he did not know what was inside the luggage; and that Jaras stood by and made no objection when the Officer searched his luggage. Based on these findings, the court concluded that the Officer was "objectively reasonable in believing that the scope of the consent included the suitcases" and, in the alternative, that Jaras "impliedly consented to the search". *Jaras,* 86 F.3d at 388 (quoting district court).

## II.

The bases for the district court correctly denying the motion to suppress are ably presented in the dissent's very thorough analysis: (1) Salazar's consent authorized the search of Jaras' luggage; (2) Jaras' conduct constituted implied consent to search; and (3) Jaras had no reasonable expectation of privacy in the contents of his luggage. *Id.* at 391–94 (Duplantier, J., dissenting).

## A.

Concerning Salazar's actual authority to consent to the search, the panel opinion does not even cite *United States v. Crain,* 33 F.3d 480 (5th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1142, 130 L.Ed.2d 1102 (1995), in which our court held that the non-owner driver of an automobile has authority to consent to a search of that vehicle, even over the objection of a non-owner passenger who enjoyed a greater possessory interest in the vehicle, in that the latter had paid money to borrow it. As for Salazar's apparent authority, the panel majority does not cite any case law from our circuit to support its conclusion that the Government failed to demonstrate Salazar had such authority.

*Crain* reiterates the well-settled principle that a driver's consent to an officer's request to look inside the vehicle "is equivalent to general consent to search the vehicle and its contents, *including containers such as luggage* ". *Id.* at 484 (emphasis added) (citing *United States v. Rich,* 992 F.2d 502, 508 (5th Cir.), *cert. denied,* 510 U.S. 933, 114 S.Ct. 348, 126 L.Ed.2d 312 (1993)). *Crain* instructs that a passenger "assume[s] the risk" that a driver with whom the passenger shares control of the vehicle may consent to it being searched. *Id.* The fact that the drugs in *Crain* were in a paper sack rather than in luggage does not make it distinguishable; I have found no authority drawing a distinction, for Fourth Amendment purposes, between luggage and other types of containers in automobiles.

In concluding that Salazar lacked actual and apparent authority to consent, the panel majority primarily relies on cases from the First, Ninth, and Tenth Circuits, and from state courts.

The cases from other Circuits are not on point. At issue in *United States v. Infante-*

*Ruiz,* 13 F.3d 498 (1st Cir.1994), was not whether the person who consented had such authority, but whether he had in fact consented. At issue in *United States v. Welch,* 4 F.3d 761 (9th Cir.1993), were the circumstances under which an officer must inquire further whether the person giving consent had authority to do so; because Officer Mitchell did inquire further (and, as discussed below, received implied consent from Jaras), *Welch* does not support the panel majority's conclusion. *United States v. Salinas–Cano,* 959 F.2d 861 (10th Cir.1992), addresses authority to consent to search a boyfriend's suitcase, left in his girlfriend's home; it does not address the special circumstance of a container in an automobile, a unique circumstance governed by a specific line of cases since the container rule in *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

As for the cited state court cases, an initial and obvious point is that they are a poor source for guidance on federal constitutional questions when the cases simultaneously address similar federal and state constitutional provisions. Obviously, a state court's construction of its own state constitutional protections, even when they are derived from language nearly identical to that found in the federal constitution, is not binding on the issue before us.

For example, *State v. Suazo,* 133 N.J. 315, 627 A.2d 1074 (1993), cited by the majority for the proposition that "a driver's apparent authority to consent to a search of the car does not include the authority to permit a search of the personal belongings of other passengers", discussed the warrant requirements of the federal and New Jersey constitutions. *Id.* 627 A.2d at 1076. Moreover, although the case cited our decision in *United States v. Varona–Algos,* 819 F.2d 81 (5th Cir.), *cert. denied,* 484 U.S. 929, 108 S.Ct. 296, 98 L.Ed.2d 255 (1987), discussed *infra,* as recognizing that "the presence and silence of a co-occupant may lend authority to a search", the New Jersey Supreme Court explained, citing New Jersey law, that the consent was "meaningless unless the consenting party understood his or her right to refuse consent". *Suazo,* 627 A.2d at 1078. This may indeed be New Jersey's interpretation of its search and seizure law; federal law affords no such absolute right to be informed of a right of refusal. *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), discussed *infra.*

Additionally, these state cases are, in several instances, factually distinguishable from *Jaras.* For example, in *State v. Zachodni,* 466 N.W.2d 624 (S.D.1991), whether the third party (the husband) had authority to consent to the search of his wife's (the defendant's) purse was not dispositive, because the officer asked for the wife's consent and the trial court found that she refused. *Zachodni,* 466 N.W.2d at 628. Restated, unlike the silent *Jaras,* the wife had refused consent to search.

In *Ledda v. State,* 564 A.2d 1125 (Del. 1989), the Delaware Supreme Court, with no discussion, agreed with the trial court's holding that a driver lacked authority to consent to a search of the passenger's luggage. *Id.* at 1129. However, the statement is dicta; the court held that the search was lawful because the officers had probable cause and exigent circumstances (supplied by the automobile exception). *Id.*

Based on *Crain,* the driver, Salazar, had authority to consent to the search of Jaras' luggage. Salazar gave such consent when he told the Officer that he could search the vehicle. Moreover, based on the Officer's suppression hearing testimony, Jaras understood that the consent included the luggage. In any event, the scope of that consent deserves en banc consideration.

### B.

Even assuming that Salazar's consent was limited in scope by his subsequent statement that the suitcases belonged to Jaras, Jaras' conduct constituted implied consent under our precedent. The panel majority's holding that it did not is contrary to *Varona–Algos,* 819 F.2d 81, in which our court recognized that one may impliedly consent to a search by failing, in some circumstances, to object.

Here, as in *Varona,* the defendant knew that the driver had consented to the search of the vehicle and its contents, yet failed to

object to, or limit, the search. As noted in the dissenting opinion, 86 F.3d at 392, the situation in *Jaras* is even more appropriate for finding implied consent, because Salazar stated, in Jaras' presence, that the suitcases belonged to Jaras, which clearly gave Jaras an obvious and timely opportunity to object to, or limit, the search. Yet Jaras remained silent, suggesting strongly that he consented.

The panel majority's conclusion that Jaras' conduct cannot be considered implied consent because it was not preceded by a request to search by the Officer, *id.* at 390, is not supported by any of our precedent, and is inconsistent with the district court's factual finding that Jaras was informed that Salazar had consented to a search of the vehicle. Even if we accepted the proposition from the Ninth Circuit case relied upon by the majority, *United States v. Shaibu,* 920 F.2d 1423 (9th Cir.1990), that a request to search must precede implied consent, that requirement is satisfied in this case. Officer Mitchell testified that, after he obtained Salazar's consent, he told Jaras, who was still seated in the vehicle, that Salazar had consented to a search. The panel majority's statement that "Jaras was not present when Salazar gave his consent to search the vehicle", 86 F.3d at 390, is irrelevant, because the Officer told Jaras that Salazar had consented. Therefore, Jaras had ample opportunity to tell the Officer that Salazar's consent did not apply to his (Jaras') luggage; instead, he was silent.

While the Officer was informing Jaras that Salazar had consented to a search, the trunk opened; he believed Jaras had opened it by pushing the trunk release button in the glove compartment, without having been asked to do so. Surely, this is implicit consent to search the items in the trunk. In short, this is a very important, and perhaps dispositive, point; but, as noted, the panel opinion fails to even mention it.

Moreover, there is additional evidence of implied consent. After Jaras had exited the vehicle and the Officer had searched Salazar's garment bag, the Officer asked Jaras if the suitcases belonged to him and what was inside them. Jaras' response—that he did not know what was inside them—can be interpreted reasonably as acquiescence in the search, because it more than suggested his total disinterest in whether the luggage was searched.

The distinction drawn by the majority between *Jaras* and *Varona*—that Jaras was not made aware that he had a right to refuse consent to the search of his luggage—is not dispositive, because "there is no absolute requirement that the government establish that [Jaras] knew" that he had a right to refuse a search. *United States v. Gonzales,* 79 F.3d 413, 421 (5th Cir.1996); *see also Schneckloth,* 412 U.S. at 232–33, 93 S.Ct. at 2050 (rejecting position "that proof of knowledge of the right to refuse consent is a necessary prerequisite to demonstrating 'voluntary' consent"). *See also United States v. Garcia,* 56 F.3d 418, 424 (2d Cir.1995) (rejecting Ninth Circuit's *Shaibu* holding as "flatly inconsistent" with *Schneckloth* ).

In sum, Jaras' conduct is most reasonably interpreted as consent. If, as the Officer testified, Jaras opened the trunk after being informed that Salazar had consented to a search, this establishes his implied consent to search Jaras' luggage in the trunk. The fact that the Officer wanted to search that luggage appears inescapable, considering that he first searched Salazar's garment bag and then questioned Jaras about the suitcases. Jaras stood silent, rather than assert ownership of that luggage. He asserted no knowledge of their contents. He never objected to the search.

Our precedent provides for implied consent to search, and this case presents a scenario appropriate for application of that doctrine. Failure to apply it on these facts is tantamount to rejecting its existence, in contradiction of our precedent. Again, this presents an issue worthy of en banc consideration.

C.

Finally, and most needless to say, protections flowing from the Fourth Amendment are triggered only by a reasonable expectation of privacy. *E.g., Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). A defendant's standing to challenge

an allegedly illegal search "depends on 1) whether the defendant is able to establish an actual, subjective expectation of privacy with respect to the place being searched or items being seized, and 2) whether that expectation of privacy is one which society would recognize as [objectively] reasonable." *United States v. Kye Soo Lee,* 898 F.2d 1034, 1037–38 & n. 5 (5th Cir.1990).

Jaras failed to establish "an actual, subjective expectation of privacy" with respect to the suitcases by disclaiming any knowledge of their contents after being directly asked what was inside them. *Cf. United States v. Colbert,* 474 F.2d 174 (5th Cir.1973) (en banc) (where defendants disclaimed any interest in briefcases upon questioning by police, defendants could assert no reasonable expectation of privacy). Without such an expectation, Jaras does not have standing to invoke the Fourth Amendment's protection against *unreasonable* search and seizure. Accordingly, the "search and seizure did not infringe an interest of [Jaras] which the Fourth Amendment was designed to protect." *Rakas v. Illinois,* 439 U.S. 128, 140, 99 S.Ct. 421, 429, 58 L.Ed.2d 387 (1978).

## III.

The panel majority's decision is contrary to our decisions in *Crain* and *Varona.* It stands the controlling "objective reasonableness" standard on its head. Because the scope of consent in multiple-occupant situations is an issue that courts and law enforcement officers often face, this case should have been considered by our en banc court. Accordingly, I respectfully dissent from the denial of such review.