UNITED STATES of America,
Appellee,

v.

Harry Lee BUCKLES,
Appellant.

No. 73–1780.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 12, 1974.

Decided May 14, 1974.

Paul E. Galter, Lincoln, Neb., for appellant.

Daniel E. Wherry, U. S. Atty., Omaha, Neb., for appellee.

Before MEHAFFY, Chief Judge, and GIBSON and WEBSTER, Circuit Judges.

MEHAFFY, Chief Judge.

The defendant, Harry Lee Buckles, was indicted by a federal grand jury for violation of 18 U.S.C. § 2314.[1] Defendant was convicted after a jury trial and sentenced to six years' imprisonment. Defendant appealed contending that his conduct did not come within the scope of activities proscribed by 18 U.S.C. § 2314; that the evidence was insufficient to establish a prima facie case; that his motion to suppress certain evidence should have been granted; that the prosecution's opening statement went beyond the scope of the crime charged and was prejudicial; and that the court's judgment and commitment was at variance with the indictment. For the reasons hereinafter set forth, we affirm the conviction but vacate and remand the judgment and commitment for correction of an error contained therein.

On February 21, 1973 the American Express Company sent a shipment of 180 blank American Express money orders to H & L Groceries at 4308 East 8th Street, Kansas City, Missouri. H & L Groceries was an agent authorized by the American Express Company to sell and issue American Express money orders. The records of the American Express Company reflect that these money orders were not received by their agent. On March 12, 1973 the defendant negotiated to the Ben Simon store in Lincoln, Nebraska, American Express money order #15–400,934,836 which was from the missing shipment. The money order had been completed in the amount of $95.00 and made payable to Max Vanhook. The defendant represented him-

1. This section provides in pertinent part:
   Whoever, with unlawful or fraudulent intent, transports in interstate or foreign commerce any falsely made, forged, altered, or counterfeited securities or tax stamps, knowing the same to have been falsely made, forged, altered, or counterfeited;

   * * * * *

   Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

self to be Max Vanhook, presented a Missouri driver's license bearing that name and endorsed the money order "Max Vanhook." On the same day defendant negotiated another money order from the missing shipment at another Lincoln clothing store. This money order had been completed in the amount of $100.00 and was also payable to Max Vanhook. On March 13, 1973 two additional money orders from the missing shipment were discovered in a jacket found in the house where defendant was taken into custody. The identification which defendant used when negotiating the money orders was also found in this house. The two money orders which defendant was shown to have negotiated were routed through interstate banking channels to the American Express Company in Colorado and were returned marked "REPORTED STOLEN." Defendant was indicted and convicted for violation of 18 U.S.C. § 2314 in connection with money order #15-400,934,836.

### 1. Scope of Conduct Proscribed by 18 U.S.C. § 2314.

■ The first issue raised by defendant is whether the activity with which he was charged comes within the scope of activities made illegal by 18 U.S.C. § 2314. Defendant contends, first, that a money order is not a security under 18 U.S.C. §§ 2311 and 2314. Although this issue has heretofore not been squarely placed before this court, we have affirmed convictions under this statute where money orders were involved. United States v. Gray, 464 F.2d 632 (8th Cir. 1972); Cloud v. United States, 361 F.2d 627 (8th Cir. 1966). This argument was rejected in a decision by the Tenth Circuit where the court stated:

> This contention is grounded upon the fact that although the definition of a 'security' is somewhat broad, there is no specific reference to money orders. Nevertheless, it is clear that a money order is an 'evidence of indebtedness' and therefore included within the statutory definition.

Nelson v. United States, 406 F.2d 1136, 1138 (10th Cir. 1969).

*Accord,* United States v. Galardi, 476 F. 2d 1072, 1076 (9th Cir. 1973), cert. denied, 414 U.S. 839, 856, 38 L.Ed.2d 75, 106; Castle v. United States, 287 F.2d 657, 660 (5th Cir. 1961), vacated on other grounds, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75. We hold that money orders are securities within the meaning of 18 U.S.C. §§ 2311 and 2314.

■ Defendant also argues that the statute is unclear as to whether the securities involved must amount to $5,000 and whether "causes to be transported" may support a conviction as opposed to "transported." We have previously recognized that the third paragraph of § 2314 does not require a $5,000 minimum. Carlson v. United States, 274 F.2d 694, 696 (8th Cir. 1960); *cf.* United States v. Sheridan, 329 U.S. 379, 389–390, 67 S.Ct. 332, 91 L.Ed. 359 (1946). As to the question regarding "causes to be transported," it is well settled that causing transportation of forged securities in interstate commerce by negotiation is a violation of this paragraph of the statute and will serve as the basis for prosecution and no personal transportation or mailing of the securities by the defendant need be shown. Amer v. United States, 367 F.2d 803, 804 (8th Cir. 1966); Halfen v. United States, 324 F.2d 52, 55 (10th Cir. 1963). *See also* Pereira v. United States, 347 U.S. 1, 8, 74 S.Ct. 358, 98 L. Ed. 435 (1954).

We find no merit in defendant's argument that 18 U.S.C. §§ 2311 and 2314 are indefinite and unclear.

### 2. Sufficiency of the Evidence.

■ Defendant's next point for reversal is that the prosecution failed to establish a prima facie case of forgery or false making of securities. In support of this argument defendant points to the absence of proof that defendant was not in fact Max Vanhook or was not authorized by Max Vanhook to negotiate the money orders in his name. Defend-

ant maintains that in absence of this proof no forgery was shown. Defendant further argues that even if false making is not synonymous with forgery and does not require proof that defendant was not Max Vanhook, the evidence was insufficient to prove false making.

Implicit in this issue is the propriety of fitting the unauthorized issuance and negotiation of a blank money order within the language of the statute. The statute speaks in the disjunctive of "falsely made, forged, altered, or counterfeited securities." Several years ago this court sought to distinguish between false making and forgery. Pines v. United States, 123 F.2d 825 (8th Cir. 1941). It was held in *Pines* that:

> Forgery, however, does not necessarily carry such presumption but indicates that there is a genuine or real obligor in existence whose obligation has been simulated. To 'falsely make' is a crime not of changing or forming an instrument to resemble an existing genuine instrument or to represent that it is the act of a genuine and existing obligor, but rather to make an instrument which has no original as such and no genuine maker whose work is copied, although in form it may resemble a type of recognized security.

*Pines, supra* at 828.

Application of this definition to the facts of this case is not difficult. The theory of the prosecution's case is that the shipment of money orders was stolen or in some manner fell into unauthorized hands; that either the defendant fraudulently filled in the amount on the money order or had knowledge that it had been filled in by an unauthorized person; and that defendant negotiated the check with fraudulent intent causing the money order to be transported in interstate commerce. This theory, if proved, would constitute a forgery within the *Pines* definition of the term, because the money order was formed or completed by the unauthorized insertion of an amount which caused the instrument to resemble a genuine American Express obligation.

■ Although the indictment charged the defendant in the conjunctive with transporting or causing to transport "a falsely made and forged security," we note that this practice is not unusual. United States v. Halfen, 467 F.2d 127 (5th Cir. 1972); United States v. Gray, *supra;* Cloud v. United States, *supra.* This form of indictment does not constitute error. *See* United States v. Tucker, 473 F.2d 1290, 1293 (6th Cir. 1973) cert. denied, 412 U.S. 942, 93 S.Ct. 2785, 37 L.Ed.2d 402.

■ Defendant's contention that a forgery was not proved because there was no evidence that defendant was not Max Vanhook or was not authorized by such person to endorse his name to the money order is specious. The offense charged under 18 U.S.C. § 2314 is not forgery but causing the interstate transportation of a falsely made or forged security with *knowledge* of its false making or forged nature, thus the prosecution was not required to show that defendant was the person who forged the money order.

■ The remaining question is whether the jury's decision was supported by substantial evidence. The principle is well-established that the evidence must be viewed in the light most favorable to the Government as the prevailing party. The Government placed into the record the following evidence: (a) on February 21, 1973 a shipment of American Express money orders was sent to H & L Groceries of Kansas City, Missouri; (b) American Express Company did not receive a trust receipt from H & L Groceries, which in the ordinary course of business is the agent's mode of acknowledging receipt of a shipment of money orders; (c) American Express Company did not receive a sales report or proceeds from H & L Groceries or any other person or business for the sale and issuance of the subject money order; (d) the subject money order was cashed by defendant at a clothing store in Lincoln,

Nebraska on March 12, 1973; (e) the money order was complete in form with an amount typed on its face of $95.00 payable to Max Vanhook; (f) defendant endorsed the check with the name "Max Vanhook"; (g) the check passed through interstate banking channels and arrived at the offices of American Express Company; (h) the American Express employee who handles money orders which are lost, misplaced, stolen, raised and forged contacted H & L Groceries, stamped the subject money order "REPORTED STOLEN," and returned the money order through banking channels; (i) on the same day that defendant cashed the subject money order he cashed another money order from the missing shipment at another Lincoln clothing store in the purchase of some shirts; (j) the witness testified that defendant selected the shirt without looking at the color or size; (k) this money order was in the amount of $100.00 and payable to Max Vanhook; (l) a third money order from the missing shipment was discovered in a jacket found in the house where defendant was taken into custody; (m) the driver's license, social security card and credit card in the name of Max Vanhook was found behind a toaster in the kitchen of the house where defendant was taken into custody; (n) defendant subsequently returned to the house, searched for the identification cards and remarked that the police must have them. An examination of this record satisfies us that the jury was justified in inferring that the subject money order was forged and that defendant had knowledge of this fact when it was negotiated.

*3. Defendant's Motion to Suppress.*

The next issue involves defendant's contention that the district court erred in overruling his motion to suppress evidence concerning the money orders removed from the jacket.

Testimony at the trial was to the effect that defendant and two companions had spent the night at the home of Dee Eutzy. Mrs. Eutzy testified that:

About 6:15 the doorbell rang and the police were at the door with warrants for my husband—they were traffic warrants—and he was out of town and they wanted to know if he was at the house and, if not, could they search the house, and I said yes, so they did come in the house.

In the course of that search, the police took defendant and his two companions into custody. As they were leaving the house the police seized two jackets which Mrs. Eutzy said were not hers. In one of the jackets the police found two American Express money orders of the missing shipment, one of which was admitted into evidence at the trial. Defendant maintains that this seizure was illegal and that evidence of such seizure was inadmissible for any purpose.

■■ Defendant's motion was properly denied. There is no question regarding the voluntariness of Mrs. Eutzy's consent or that consent freely and intelligently given by the proper person can operate to eliminate any question otherwise existing as to the propriety of a search. Maxwell v. Stephens, 348 F.2d 325 (8th Cir. 1965), cert. denied, 382 U. S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353; Burge v. United States, 332 F.2d 171 (8th Cir. 1964), cert. denied, 379 U.S. 883, 85 S.Ct. 155, 13 L.Ed.2d 89. Defendant's basis for alleging error is that Mrs. Eutzy was not the proper person to consent to a search and seizure of the jackets because they did not belong to her. This basis has no validity because Mrs. Eutzy had the primary right to the occupation of the premises, unlike the situation in Stoner v. California, 376 U. S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964), relied on by defendant. It has been held that a host can consent to a search of his premises occupied by a guest. Weaver v. Lane, 382 F.2d 251 (7th Cir. 1967), cert. denied, 392 U.S. 930, 88 S.Ct. 2289, 20 L.Ed.2d 1390 (1968); Burge v. United States, *supra*; Fredricksen v. United States, 105 U.S. App.D.C. 262, 266 F.2d 463 (1959). The consent of a joint occupant of a residence to search the premises jointly oc-

**1382**

cupied is also valid against the co-occupant. United States v. Matlock, 415 U. S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). In *Maxwell* the defendant also argued that his coat was an item of such personal nature that it could not be seized without his consent. We rejected the proposition saying:

> [T]his argument overlooks the consent to the officers' acquisition of the coat by a person having the proprietary interest in the premises where it was. * * * It was an item which freely came into the hands of the authorities by one who had the right to make it available to them. * * *
>
> The situation therefore appears to us to be one not involving any unreasonable search or seizure within the prohibition of the Fourth, Fifth, and Fourteenth Amendments. Reasonableness, after all, is the applicable standard. [Citations omitted.]

Maxwell v. Stephens, *supra* at 337, 338.

We find that the search and seizure in this case was no less reasonable and did not violate defendant's constitutional rights.

### 4. Prosecution's Opening Statement.

Defendant further contends that it was prejudicial error for the prosecutor to refer to the money orders involved as being stolen. The transcript reveals that in the course of his opening statement the prosecutor stated that the American Express Company returned the subject money orders and "reported" them stolen. Subsequent testimony proved that this was in fact done. There is no merit to this allegation of error because the routing and handling of the money orders were indeed relevant to the issues involved at the trial. Whether the money orders were stolen was not in issue, however, it was relevant to show that the American Express Company reported the money orders stolen and had them returned when they were presented for payment.

### 5. Variance Between Indictment and Judgment and Commitment.

Defendant complains of the variance between the indictment and the judgment and commitment. He was charged under 18 U.S.C. § 2314 with transporting and causing to be transported in interstate commerce a falsely made and forged security. The judgment and commitment states that he was found guilty of "interstate transportation of stolen property in violation of Title 18, United States Code, § 2314." The judgment and commitment should be amended to conform with the indictment.

The judgment is vacated and the case remanded with directions to the district judge to amend the judgment and commitment consistent with this opinion. The judgment of the district court is affirmed in all other respects.