**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Chad Allen FOUNTAIN, Defendant and Appellant.**

**No. 18990.**

Supreme Court of South Dakota.

Considered on Briefs May 24, 1995.

Decided July 26, 1995.

Mark Barnett, Atty. Gen., Frank Geaghan, Asst. Atty. Gen., Pierre, for plaintiff and appellee.

Steven R. Binger of Breit and Binger, Sioux Falls, for defendant and appellant.

AMUNDSON, Justice.

Chad Fountain ("Fountain") appeals his conviction for possession of LSD pursuant to SDCL 22–42–5,[1] claiming that the third-party consent to search his jacket which contained LSD was unlawful. We affirm.

## FACTS

The facts as described here are gleaned from the transcript of the suppression hearing, as no trial was conducted. On the morning of Wednesday, November 10, 1993, the local offices of the Drug Enforcement Administration and Sioux Falls police each received a tip from a confidential informant that Fountain and Adam Raski ("Raski") were in possession of LSD. Law enforcement determined that there were outstanding misdemeanor warrants for the arrest of both men, and decided to attempt to contact them at the respective locations identified by the informant.

Special Agent Matthew Mohr of the State Division of Criminal Investigation, Detectives Don Satterlee and Mark Moberly, and DEA agent Gary Harvison, all working with the local Drug Task Force, first went to the apartment where Raski was staying, and advised him that he was being arrested and taken into custody pursuant to the outstanding warrant. A routine pat down search of Raski revealed LSD and a loaded .22-caliber semi-automatic pistol.

Having found the informant's information reliable, the law enforcement agents then went to an apartment the informant had pointed out as the location where Fountain was staying. They knocked and identified themselves as law enforcement agents to the woman who answered the door, who identified herself as Billi Jo Ugalde. When Ms.

---

1. SDCL 22–42–5 reads:

 No person may knowingly possess a controlled drug or substance unless such substance was obtained directly or pursuant to a valid prescription or order from a practitioner, while acting in the course of his professional practice, or except as otherwise authorized by chapter 34–20B. A violation of this section is a Class 5 felony.

Ugalde indicated that Fountain was in her home sleeping on the couch, the officers then asked for and received permission from her to enter the apartment. Agent Mohr approached the waking man and informed him that there were outstanding warrants for his arrest; he got up from the couch. Fountain was then placed under arrest and taken to jail.

According to Agent Mohr's testimony, Detective Satterlee then sought and was given Ms. Ugalde's consent to search her apartment. During the search, Ms. Ugalde's child pointed to a jean jacket on the living room floor and said to Agent Harvison "Do you know whose jacket that is? ... [T]hat's Chad's; Chad, the one you just took to jail." Agent Harvison then retrieved the jacket and found 100 hits of LSD and a tweezers in it.

Fountain was later indicted on charges of possession of a controlled drug and possession of a controlled drug with intent to distribute. He sought suppression of the LSD seized from his coat. His motion was denied on the basis that the search was conducted pursuant to valid consent. Thereafter, Fountain entered into a stipulation with the State, the substance of which provided as follows:

> WHEREAS the Defendant has heretofore filed a Suppression Motion alleging that the search by police was a violation of the Fourth Amendment and said Motion has been denied by the Court, and
>
> WHEREAS the intent of the parties is to avoid the necessity of a jury trial while simultaneously preserving the Defendant's right to appeal the denial of his Suppression Motion, it is hereby
>
> STIPULATED AND AGREED that the State shall file an amended information charging the Defendant with the offense of Possession of Controlled Substance under SDCL 22-42-5, it is further
>
> STIPULATED AND AGREED that the Defendant shall waive his right to a trial by jury and instead shall agree to a court trial; it is further
>
> STIPULATED AND AGREED that at the time of the above-described court trial, the state's witnesses, if called to present

live testimony before the Court, would testify as follows: ...

The stipulated testimony of the State's witnesses included that Fountain was an overnight guest of Ms. Ugalde, and that the jacket in which the LSD was found was Fountain's.

Based on the stipulation, the trial court found Fountain guilty of possession of a controlled substance. His sentence was stayed pending this appeal.

## ISSUE

DID THE TRIAL COURT ERR IN REFUSING TO SUPPRESS EVIDENCE SEIZED PURSUANT TO THIRD-PARTY CONSENT?

Fountain approaches his claim of a Fourth Amendment violation in three ways. First, he alleges there was no consent to search the apartment where he had been an overnight guest. Second, even if there was such consent, he contends the consent was invalid because the officers deliberately bypassed him and did not ask him for consent to search his jacket. Third, he argues that even if Ms. Ugalde consented to the search of his jacket, she did not have authority to give valid consent to search.

■ The State contends that this entire issue has not been preserved for appeal. The record clearly demonstrates otherwise. In the stipulation entered into by the State and Fountain, the State specifically agreed that this issue was preserved for appeal as no trial was to be conducted. Further, the Court is presented with a full record of the matter as it was presented to the trial court and, because there was no trial conducted, Fountain sought this provision in the stipulation for the sole purpose of ensuring the matter was preserved for appeal. The State's contention wholly lacks merit as the record has been properly preserved for appeal.

■ When called upon to review a trial court's legal decision on a suppression motion, we do so using the abuse of discretion standard. *State v. Ramirez*, 535 N.W.2d 847 (S.D.1995); *State v. Flegel*, 485 N.W.2d 210,

213 (S.D.1992). The ultimate decision of the trial court on suppression will be affirmed unless the defendant can demonstrate that such discretion has been exercised to an end or purpose not justified by, and clearly against, reason and the evidence. *Ramirez,* slip op. at 3, —— N.W.2d ——; *State v. Almond,* 511 N.W.2d 572, 574 (S.D.1994). However, because the presence or absence of consent to search is a question of fact, the trial court's finding regarding consent will be upheld unless, viewing the evidence in the light most favorable to the finding, it is clearly erroneous. *Almond,* 511 N.W.2d at 573–74.

▮ Initially, we note that exceptions to the warrant requirement of the Fourth Amendment may justify warrantless searches, including searches based upon consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973); *Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Almond,* 511 N.W.2d at 575. *See generally Ramirez,* for discussion of Fourth Amendment protection from unreasonable search and seizure. Consent given to law enforcement to conduct a search satisfies the Fourth Amendment and removes any necessity to obtain a warrant. *Bustamonte; State v. Zachodni,* 466 N.W.2d 624, 628 (S.D.1991). With these basic principles in mind, we consider Fountain's particular contentions.

*A. Did Ms. Ugalde consent to the search?*

Essentially, Fountain contends there was no competent evidence that Ms. Ugalde consented to the search of her apartment and, consequently, the search which revealed his jacket and the LSD contained in it was constitutionally infirm. He argues that the testimony of Agent Mohr alone is insufficient to show consent by clear and convincing evidence because it was not Agent Mohr himself who asked for and received the consent of Ms. Ugalde, and Agent Mohr was not present during the conversation where the consent was requested and given.

▮ As noted previously, the presence or absence of consent to a search is a question of fact, the evidence of which must be reviewed in a light most favorable to the trial court's determination. *Almond; Zachodni.* The State must prove the existence of valid consent by clear and convincing evidence. *Almond,* 511 N.W.2d at 576. In those instances where there exists both shared use and joint access or control of the premises or effects in question, a third party may validly consent to the search of the other's property. *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 250, n. 7 (1974); *Zachodni,* 466 N.W.2d at 628. An overnight guest who shares use and access of the premises in question is subject to the third-party consent of his host to search the nonconsenting guest's effects, and such third-party consent is sufficient to constitute a valid search under the Fourth Amendment. *Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *Zachodni,* 466 N.W.2d at 628.

▮ Fountain does not dispute that the apartment was Ms. Ugalde's personal residence, that she had authority to permit a search of her own residence, or that he was an overnight guest. The trial court made specific findings regarding whether Ms. Ugalde had consented to the search of her apartment:

11. Officers then asked Billy Jo Ugalde for permission to search the entire house and she gave them her consent.

12. While the officers were searching the residence, a young girl pointed out Fountain's jean jacket lying eight to ten feet from where Fountain had been sleeping.

\*　　\*　　\*　　\*　　\*　　\*

17. Chad Fountain ... was an overnight guest on November 10, 1993.

Despite these findings, Fountain argues that the testimony of Agent Mohr that consent was given by Ms. Ugalde to Detective Satterlee outside of Agent Mohr's presence does not constitute clear and convincing evidence necessary to support the finding that Ms. Ugalde gave her consent to search. The trial court's finding will be reversed as clearly erroneous if, and only if, after reviewing all of the evidence, this Court is left with a

definite and firm conviction that a mistake has been made. *Almond*, 511 N.W.2d at 576.

Agent Mohr did not have first-hand knowledge that Ms. Ugalde had given her consent to the search. There is no doubt that had the State called either Detective Satterlee or Ms. Ugalde to testify it would have obviated the need for appellate review of this issue. Unfortunately, the State chose not to do so, and we must consider whether Agent Mohr's testimony was sufficient to support the trial court's finding of consent by clear and convincing evidence.

Despite the glaring absence of testimony from either Satterlee or Ms. Ugalde, there is no dispute that there was evidence that consent was given. "Clear and convincing evidence is evidence 'so clear, direct, weighty, and convincing as to allow the trier of fact to reach a clear conviction of the precise facts at issue, without hesitancy as to their truth.'" *In re J.A.H.*, 502 N.W.2d 120, 123 (S.D.1993) (citation omitted). The trial court was in the best position to observe the testimony of the witnesses and evaluate the weight to be accorded the evidence presented. *Almond*, 511 N.W.2d at 576. Although this may be a close call given the posture in which the issue is presented, Fountain has not demonstrated clear error in the trial court's finding that consent was given. Accordingly, based upon this finding, the trial court did not abuse its discretion when it concluded that Ms. Ugalde had given consent to the search which revealed Fountain's jacket and that such consent satisfied the Fourth Amendment requirements necessary to use the evidence obtained in that search.

*B. Was Ms. Ugalde's consent invalid because the officers did not ask for Fountain's consent to search the jacket?*

▪ Next, Fountain contends that the chronology of his arrest, transport to jail,

and the subsequent search after he was removed from the premises was deliberately designed to bypass him (presumably because the officers knew he would not authorize the search) to obtain Ms. Ugalde's consent to the search. He complains that the police never gave him a chance to object to the search because they first arrested him and removed him from the scene, then sought Ms. Ugalde's permission to search.[2]

In support of this argument, Fountain relies upon *United States v. Impink*, 728 F.2d 1228 (9th Cir.1984), where the police sought the consent of the landlord before they went to search the tenant's property for a suspected drug lab. There, the tenant was present at the time of the search and objected. In holding the search invalid, the Ninth Circuit pointed out that the police knew that the tenant was present at the time of the search, that the tenant had a privacy interest in the premises superior to that of the landlord, and that Impink expressly refused to provide consent. The *Impink* Court observed "[W]hen the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest, the validity of third party consent is less certain." *Id.* at 1234. It also stated in a footnote that "It hardly bears noting that police may not arrest a suspect solely to prevent his presence at the time consent from a third person is sought." *Id.* at 1233, n. 5.

While the *Impink* case may be similar to the point Fountain wishes to make, his reliance on this case is misplaced. First, the case is not binding authority on this Court. More importantly, however, the facts here are clearly distinct from those in *Impink*. While Fountain may be said to have a limited privacy interest in the apartment because he was an overnight guest, it is undisputed that Ms. Ugalde's leasehold interest is superior to his, and that she had authority to permit a search. As to the jacket in particular, Foun-

---

**2.** An inconsistency in Fountain's brief should be noted in that he also claims the officers began their search pursuant to Ms. Ugalde's consent while he was still present, all the while contending the officers removed him from the scene prior to seeking consent to search. Fountain also contends that Ms. Ugalde was the informant who had contacted the police and DEA, and that

the consent to search was thus obtained from their own informant. However, a fair reading of the transcript of the suppression hearing demonstrates that the informant personally met with two of the officers to drive them by the location where Fountain could be found. Agent Mohr's testimony referred to the confidential informant as a man.

tain was the owner, but he chose not to exercise and maintain control over the jacket when he left it behind or failed to protect its privacy. As pointed out by the trial court in its decision, Fountain left the jacket behind in Ms. Ugalde's apartment subject to the risk that she might permit its inspection.

Also, unlike *Impink*, Fountain was not present at the time the search was commenced and did not make any attempt to protect his property from inspection when he was present or before he left, either through objection or otherwise. Finally, there was no evidence that the officers had an improper motive in taking Fountain to jail before asking for consent to begin the search or that removing him from the scene was solely for the purpose of facilitating their search. This is not a case like *Impink* where the officers sought the landlord's permission to search even before they arrived at the scene, and then disregarded the tenant's objections to the search.

Fountain's argument that Ms. Ugalde could not consent to the search of his jacket because the police had already arrested him and transported him to jail does not find support in any of the authority upon which he relies. In essence, his arguments on appeal can be distilled down to his assertion that law enforcement had enough time to obtain a warrant to search for drugs but instead chose to execute the outstanding warrants only as a pretext to search for drugs. He basically advocates that there be no exceptions to the warrant requirement when a search is conducted during the working hours of the court. However, we have regularly observed that if consent to a search is obtained, neither a search warrant nor probable cause need exist to validate the search and authorize the use of the fruits of the search against the defendant consistent with the constitutional provisions of the Fourth Amendment. *See Zachodni*, 466 N.W.2d at 628. Thus, Fountain has failed to establish that the trial court abused its discretion in concluding that the search was not invalid because he had been removed from the scene and his consent to search was not requested. Thus, the evidence revealed by the search of his jacket was admissible.

## C. Was Ms. Ugalde's consent to search invalid because law enforcement officers knew she did not have authority to give valid consent?

 Finally, Fountain argues that since law enforcement was told by Ms. Ugalde's child that the jacket belonged to him, they knew Ms. Ugalde had no authority to consent to its search. As an overnight guest, Fountain did have a reasonable expectation that his belongings were private and thus, he may contest the validity of the search. *See Olson; State v. Tapio*, 459 N.W.2d 406 (S.D.1990). As previously stated, we have recognized an exception to the warrant requirement when consent to search is given. *Tapio*, 459 N.W.2d at 413–14. We have also recognized the logical extension that "consent may be given by a third person who has 'common authority over or other sufficient relationship to the premises or effects sought to be inspected.'" *Id.* at 414 (citation omitted).

 Here Fountain's argument focuses on reasonable expectations and whether the officer's understanding of the scope of the consent to search was objectively reasonable. In a similar case which involved the scope of the consent the actual suspect himself had given to search a closed paper bag in his car, the United States Supreme Court held: "The Fourth Amendment is satisfied when, under the circumstances, it is objectively reasonable for the officer to believe that the scope of the suspect's consent permitted him to open a particular container in the automobile." *Florida v. Jimeno*, 500 U.S. 248, 249, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297, 301 (1991). The Court went on to say, "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251, 111 S.Ct. at 1803–1804, 114 L.Ed.2d at 302 (citation omitted). The same is true here where we consider the scope of the consent of a third party. Our focus is whether a typical person would have understood Ms. Ugalde's consent to have included authorization to search Fountain's jacket lying on the

floor of her living room when she consented to a search of her entire apartment.

■■■■■ A defendant is not automatically entitled to expect that the contents of articles left behind at another's premises will remain private and, should he leave such articles behind, he assumes the risk that the other person may consent to a search of the articles. *Ingram v. State,* 703 P.2d 415, 425 (Alaska App.1985); *Fears v. State,* 152 Ga. App. 817, 817–18, 264 S.E.2d 284, 285 (1979); *State v. Jenkins,* 340 So.2d 157, 175 (La. 1976); *Cain v. State,* 337 So.2d 935, 936 (Miss.1976); *People v. Matus,* 166 A.D.2d 464, 560 N.Y.S.2d 504, 505 (1990). Items which do not in and of themselves have a high degree of privacy, such as articles of clothing, are not entitled to the privacy accorded opaque, closed containers, such as a suitcase or overnight bag. *United States v. Salinas–Cano,* 959 F.2d 861 (10th Cir.1992). Indeed, *Jimeno* suggests that consent to search which does not include any express limitations creates an objectively reasonable expectation that the consent authorizes a search of opaque, closed containers. Further, it has been held that a coat may be seized in the course of a search pursuant to a third party's consent where the third party has the primary right to the occupation of the premises. *United States v. Buckles,* 495 F.2d 1377, 1381 (8th Cir.1974).

Here, the trial court found that Fountain's jacket was lying on the floor of the apartment's common living area, just 8–10 feet from where he had been sleeping. When he was taken into custody, he left his jacket behind and made no attempt to exercise any control over the jacket, or to express any restriction to search the jacket. The trial court concluded Ms. Ugalde's consent included the authority to consent to inspection of the jacket left in her living room, and that conclusion finds support in the authority outlined here. It cannot be said that the trial court abused its discretion in concluding that the jacket in Ms. Ugalde's living room could be searched, despite the fact the officers knew it was not owned by Ms. Ugalde and that it was the property of Fountain. Fountain has failed to demonstrate that the scope of the search authorized by Ms. Ugalde did not give rise to an objectively reasonable expectation that his jacket was included within that scope.

The trial court correctly denied Fountain's motion to suppress, and his conviction is affirmed.

MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

SABERS, J., concurs specially.

SABERS, Justice (concurring specially).

These officers had more than enough information against this defendant to obtain a search warrant. Despite that fact, they proceeded on the pretense of the outstanding misdemeanor warrants for failure to appear in court and failure to pay a fine. Sometimes one wonders if police officers are allergic to obtaining search warrants. Maybe they prefer to do things the hard way.

Once the officers decide to "shortcut" based on pretense, they are bound to justify in court the search of the premises for drugs. No one is naive enough to believe that they really went to the house to make an arrest solely on the misdemeanor warrants without searching. As a result, they must justify *their conduct in circuit court* and now, on appeal to this court. I submit that a proper search warrant would have eliminated the necessity for this litigation.