1996 SD 142

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Joseph William DREPS, Defendant and Appellant.**

No. 19256.

Supreme Court of South Dakota.

Considered on Briefs Feb. 15, 1996.

Decided Dec. 11, 1996.

Mark Barnett, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, for plaintiff and appellee.

Robin L. Zephier of Abourezk Law Offices, Rapid City, for defendant and appellant.

AMUNDSON, Justice.

[¶ 1] Joseph W. Dreps (Dreps) appeals his conviction of possession of a controlled substance and possession of marijuana. He

claims evidence obtained in a consent search of his car and statements he made while seated in a patrol car which were tape recorded without his knowledge should have been suppressed. We affirm.

## FACTS

[¶ 2] Dreps was stopped by highway patrol troopers Steve Swenson and Brian Bard on May 1, 1994. The troopers noticed a dangling object hanging from the rear view mirror of Dreps' vehicle and heard an exhaust leak, which prompted them to stop the vehicle. Troopers Swenson and Bard approached Dreps' vehicle, and asked him to produce his driver's license, vehicle registration, and proof of insurance. Trooper Swenson went back to the patrol car and activated a hidden audio tape recorder. Swenson then asked Dreps to bring his documentation to the patrol car and to sit in the front passenger side of the car. Once Dreps had joined Trooper Swenson in the patrol car, Dreps was issued warning citations and his driver's license and registration were returned to him.

[¶ 3] Immediately after completing the ticketing and returning Dreps' documentation to him, Trooper Swenson told him the encounter had concluded but then started another line of inquiry:

SWENSON: Okay, you're free to go .... I do have a question, if you don't mind[.] [A]re you carrying any illegal weapons, drugs or contraband up in the car, are you?

DREPS: No sir.

SWENSON: Okay. Do you have a problem with ah Trooper Bard and myself searching the vehicle for those items?

DREPS: (Pause) Well, I really do need to get back to Rapid City.

SWENSON: Just take us a little bit.

DREPS: (Pause) Well, I suppose.

SWENSON: Okay.

Trooper Swenson then asked Dreps what his passenger had in the car. Dreps answered that the passenger might have a pistol, but he believed he had a permit to do so.[1] Trooper Bard then asked Dreps to sit in the back of the patrol car: "Okay, well for our own safety, would you just have a seat in the back. This is unlocked. Okay, so it is open. Just have a seat in there, and get your friend to come back here and get you on the road real quick here. Okay?"

[¶ 4] While Trooper Bard was having this exchange with Dreps, Trooper Swenson approached the passenger, Leonard Van Ausdale, who was still seated in Dreps' vehicle. Swenson advised Van Ausdale that Dreps had consented to the search of the vehicle. Trooper Swenson asked Van Ausdale if he could search his belongings and Van Ausdale said he did not have a problem with the search. Van Ausdale was asked to step out of the vehicle and take a seat in the back of the patrol car with Dreps. Van Ausdale did so, and the conversation he had with Dreps was recorded. Both men made inculpatory statements while the hidden tape recorded their conversation.

[¶ 5] Meanwhile, during the search of Dreps' vehicle, Troopers Swenson and Bard found two black canisters in a coat. One contained marijuana, the other contained methamphetamine. Also found in another coat was a bag of marijuana. Dreps was arrested for possession of controlled substances, tried and convicted. He appeals, claiming the trial court should have suppressed evidence obtained in the search of his car and the surreptitiously recorded statements he made while seated in the patrol car.

## ISSUES

[¶ 6] **1. Did the trial court abuse its discretion in denying Dreps' motion to suppress evidence obtained in the search of his car to which he consented?**

---

1. Dreps asserts that at this point "[he] asked to accompany Swenson and Bard to witness the search, but was not allowed to." He also claims "[he] was not allowed to, and was prevented from witnessing the search, therefore he had no opportunity to see what Swenson and Bard were doing." Neither the settled record nor the transcript of the taped conversation support these bare assertions.

[¶ 7] Dreps contends that he was illegally detained by Trooper Swenson and as a result, his consent to the search of his car was invalid. He claims that as a consequence, the drugs found in the search of his car were inadmissible. In response, the State asserts that the findings made by the trial court amply support its conclusion that Dreps voluntarily consented to the search of his car.

[¶ 8] Dreps challenges the denial of his motion to suppress the evidence discovered in the consent search. The standard of review we apply to these preliminary evidentiary questions was fully set forth in *State v. Baysinger*, 470 N.W.2d 840, 843 (S.D.1991) (citations omitted):

> A trial court's findings of fact from a suppression hearing must be upheld unless they are clearly erroneous.... This court's function under the clearly erroneous standard is to determine whether the decision of the lower court lacks the support of substantial evidence, evolves from an erroneous view of the applicable law or whether, considering the entire record, we are left with a definite and firm conviction that a mistake has been made. In making this determination, we review the evidence in a light most favorable to the trial court's decision.
>
> To disturb a trial court's ultimate decision to suppress evidence, this court must find that an abuse of discretion has occurred. This refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence. In this regard, we do not determine whether we would have made a like decision but only whether a judicial mind, considering the law and facts, could have reached a similar decision.

Additionally, "the presence or absence of consent to search is a question of fact [and] the trial court's finding regarding consent will be upheld unless, viewing the evidence in the light most favorable to the finding, it is clearly erroneous." *State v. Fountain*, 534 N.W.2d 859, 863 (S.D.1995) (citation omitted). Consent must be proven by the State by clear and convincing evidence. *Id.* "Clear and convincing evidence is evidence so clear, direct, weighty, and convincing as to allow the trier of fact to reach a clear conviction of the precise facts at issue, without hesitancy as to their truth." *Id.* at 864 (citation and quotation marks omitted).

[¶ 9] In ruling on this evidentiary issue, the trial court was guided by the principle that consent given to law enforcement to conduct a search satisfies the Fourth Amendment search and seizure provisions and eliminates the necessity to obtain a warrant. *Fountain*, 534 N.W.2d at 863, *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854, 858 (1973), and *State v. Zachodni*, 466 N.W.2d 624, 628 (S.D.1991). "Once consent to a search has been voluntarily tendered to the State's agents, not only is a warrant unnecessary, but so is probable cause." *Zachodni*, 466 N.W.2d at 628 (citation omitted). To determine if a consent search is valid, we must examine the totality of the circumstances to ensure that the consent was voluntarily given. *State v. Almond*, 511 N.W.2d 572, 573 (S.D.1994). An otherwise valid consent is vitiated if it was obtained during an illegal detention, and will invalidate a search based solely on such consent. *Id.*

[¶ 10] Dreps claims his consent was not voluntarily given because he was illegally detained. He argues that once Trooper Swenson told him he was free to leave, the Trooper was no longer entitled to ask him any questions. According to his logic, any additional questioning was a detention which must have been supported by probable cause to stop him. Since Trooper Swenson admitted he had no articulable suspicion at the time he asked whether Dreps had any illegal weapons, drugs, or contraband, and thus no probable cause to detain him, Dreps contends that he was illegally detained at the time Trooper Swenson asked for consent to search. Thus, he claims the trial court's ultimate conclusion that he validly consented to the search is erroneous.

[¶ 11] First we address Dreps' claim that probable cause was required before he could be asked to consent to a search of his car. The trial court correctly concluded that "[an] officer does not have to have probable cause to search before requesting consent to

search." Consent given to law enforcement to conduct a search satisfies the Fourth Amendment and removes any necessity for a warrant or even probable cause. *Fountain*, 534 N.W.2d at 863; *Zachodni*, 466 N.W.2d at 628.

[¶ 12] Dreps does not challenge any of the trial court's factual findings.[2] Rather, he claims the facts here are like those in *State v. Almond*, 511 N.W.2d 572, and *State v. Ramirez*, 535 N.W.2d 847 (S.D.1995). He claims that, like *Almond*, he was stopped for a routine traffic violation, the Trooper issued a warning citation, returned his documents to him and, once that was completed, the Trooper then asked for permission to search. In *Almond*, we held there was a second arrest and illegal detention but we did so based on facts that do not exist in Dreps' case. In *Almond*, the defendant was issued a citation and warning ticket, exited the patrol vehicle, but was then commanded to stop and empty the contents of his pockets on the hood of the patrol vehicle. 511 N.W.2d at 573. Our decision there suppressing evidence from his pockets relied on the trial court's specific

findings that at no time was Almond advised that he was free to leave and, under the circumstances, a reasonable person would have thought he was in custody. 511 N.W.2d at 574–75. The totality of the circumstances in this case indicate that Dreps was free to leave and that he was not subjected to a second and illegal detention.[3]

[¶ 13] Likewise, Dreps' reliance on *Ramirez* is misplaced. Dreps claims that when Trooper Swenson asked him to sit in the back of the patrol car during the search, he was in "back seat jail," a custodial detention for which no probable cause existed. *See Ramirez*, 535 N.W.2d at 850 (highway patrol officer's vehicle often serves as temporary jail). Dreps was not placed into the back seat of the patrol car until *after* Trooper Swenson asked for and received his permission to search his car. This is a significant distinction because the law will invalidate consent to search only "when an individual is under an illegal detention *at the time when ... consent to search is given[.]*" *Almond*, 511 N.W.2d at 576 (emphasis added; citation omitted).[4]

2. Dreps does not challenge any finding of fact as clearly erroneous. The trial court made the following findings which are relevant to this issue:

    3. Trooper Swenson had probable cause to stop the vehicle driven by [Dreps] on May 1, 1994, because the Trooper observed an object dangling between the view of the driver and the windshield in violation of SDCL 32–15–6 and heard what sounded to him to be a defective exhaust system on the vehicle in violation of SDCL 32–15–17.

    4. Trooper Swenson issued warning tickets to Dreps and asked if he could search Dreps' car.

    5. Dreps consented to the search of his car.

    6. Trooper Swenson requested and [Dreps] gave his free, intelligent, unequivocal and specific consent to search his vehicle without any duress or coercion, actual or implied.

    7. Trooper Bard requested and Defendant Van Ausdale gave his free, intelligent, unequivocal and specific consent to search his possessions in the vehicle without any duress or coercion, actual or implied.

    8. The defendants were free to leave and Trooper Swenson told [Dreps] that he was free to leave and was not in custody or under arrest when Trooper Swenson asked [Dreps] for permission to search his automobile.

    9. Dreps' consent to search was unequivocal and specific.

    10. Nothing about the traffic stop, issuance of the warning ticket or request to search was coercive.

    11. The troopers made no "show of force" (other than their uniforms, badges, guns and patrol vehicle) to obtain consent to search.

    12. The evidence the defendants seek to suppress was found as a result of defendants' valid consent to search.

3. The United States Supreme Court has recently reaffirmed this "traditional contextual approach." *Ohio v. Robinette*, —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996). In *Robinette*, the Court held that the federal constitution does not "require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary." *Id.* at ——, 117 S.Ct. at 421.

4. Dreps also asserts that he asked to accompany the officers to watch the search, but his request was denied. As explained in footnote 1, there is no factual basis in the record for this claim. If he had made such a request, we might be presented with a different situation, such as that in *Ramirez*, where Trooper Swenson asked for and received the defendant's permission to search the car but the consent was withdrawn once the Trooper placed the defendant in the rear of the patrol car. 535 N.W.2d at 848. We need not consider Dreps' assertion that he withdrew his consent or attempted to limit his consent to a search conducted in his presence because it is wholly unsubstantiated.

[¶ 14]   Despite his contention that this is a unique set of facts which warrants suppression of the evidence found during the consent search, several other courts have considered similar cases and reached the same conclusion.  For example, in *United States v. Rivera*, 906 F.2d 319, 320 (7th Cir.1990), an officer pulled over the defendant's vehicle to investigate its erratic speed and an object obstructing the view of the front wind shield.  The officer took the defendant's license and, while both were seated in the patrol car, the defendant was issued a warning ticket for the obstruction.  *Id.*  The officer returned to defendant his license and warning ticket and said 'That's it.'  *Id.*  Defendant had his hand on the door handle to exit the patrol vehicle when the officer asked if he was carrying any drugs, weapons, or contraband.  *Id.*  Following a negative response, the officer asked to look in the defendant's car, and the defendant said 'sure.'  *Id.*  The officer required the defendant and his passenger to stand in a particular location during the search, which produced evidence of drug crimes.  *Id.* at 320–21.

[¶ 15]   On appeal, the defendant claimed the stop was pretextual and exceeded the proper scope of a traffic stop.  The Seventh Circuit Court of Appeals rejected his arguments, holding no Fourth Amendment violation occurred which required suppression of the evidence.  *Id.* at 322–23.  *See United States v. Deases*, 918 F.2d 118 (10th Cir. 1990), *cert. denied*, 501 U.S. 1233, 111 S.Ct. 2859, 115 L.Ed.2d 1026 (speeding stop, warning ticket issued and license returned, then consent to search sought and received); *Rada v. State*, 544 So.2d 1112 (Fla.App. 3 Dist.1989) (roadblock stop, officer advised defendant he was free to leave, then consent to search sought and received); *State v. Clowney*, 87 Md.App. 48, 589 A.2d 86 (1991) (speeding stop, warning ticket issued and license returned, advised he was free to leave, then consent to search sought and received); *State v. Mercado*, 105 Or.App. 582, 805 P.2d 744 (1991) (twice advised defendant free to leave, license and registration returned, then consent to search sought and received).  *But see State v. Bunnell*, 517 So.2d 439 (La.App. 1 Cir.1987) (speeding stop, refused to consent to search, officer said search was routine and would look briefly into car then allow to leave, consent given after second officer arrived; evidence suppressed because defendant illegally detained when consent given).

[¶ 16]   Dreps also urges this court to reject the trial court's determination that his consent was voluntary.  Dreps claims to have been coerced into consenting to the search because Trooper Swenson asked for permission to search his car immediately after returning to Dreps his driver's license and vehicle registration and expressly stating "You are free to go."  Dreps argues these unique facts prove "[Trooper Swenson] was obviously exhibiting a show of authority, inducing Dreps to succumb and submit to that authority, and to 'cave in.' "  Again, the facts here are not as unique as he contends.

[¶ 17]   Dreps advances no legal reasons to prove the trial court's factual determination that his consent was voluntary is clearly erroneous.  The trial court had an opportunity to view the witnesses and the evidence, including the tape recorded conversation.  The evidence included the actual conversation in which Trooper Swenson asked to search, Dreps said he needed to get back to Rapid City, Swenson responded that it would take just a little bit, and Dreps said "Well, I suppose."  After hearing this evidence, as well as testimony about the general circumstances, the trial court found that he made a knowing, intelligent, and voluntary consent to search the car.

[¶ 18]   We must view the evidence in a light most favorable to the trial court's determination here that consent was voluntarily given and doing so, we cannot say that Dreps has met his burden to prove clear error.  Dreps does not contend that the court overlooked any facts or point to any other basis to conclude that the finding of valid consent is clearly erroneous.  Even if we would not have made the same decision, we cannot reverse a factual finding unless the error is clear.  The decision of the trial court denying Dreps' motion to suppress the evidence obtained pursuant to the consent search of his car was a proper exercise of discretion.

**[¶ 19]  2. Did the trial court abuse its discretion in denying Dreps' motion to suppress his statements made while seated in the patrol car?**

[¶ 20]  Dreps also contends that the inculpatory statements he made while seated in the patrol car should have been suppressed because they were surreptitiously recorded. His argument is based on his contention that the "statements were all made subsequent to the illegal detention and search without valid consent." He also claims that merely placing him in the back of the patrol car with Van Ausdale constituted an interrogation because Trooper Swenson knew it was likely "the two would converse and incriminating statements would be elicited[.]" *See Rhode Island v. Innis,* 446 U.S. 291, 300–301, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297, 307–308 (1980).

[¶ 21]  These arguments are based on Dreps' contention that he was illegally detained when he was placed in the back seat during the search of his vehicle. We have rejected this contention. Additionally, in *Ramirez,* we decided that there is no reasonable expectation of privacy while an individual is seated in the back seat of a highway patrol vehicle such that would require suppression of secretly recorded statements. 535 N.W.2d at 850. There is no factual distinction which would justify a different result in this case. The trial court properly concluded that the taped statements were admissible here. Thus, there was no abuse of discretion.

[¶ 22]  This is the second time we have been presented with these surreptitious tape recordings. We noted in *Ramirez,* 535 N.W.2d at 850, that this type of conduct is offensive to personal sensibilities. It is obvious that this practice continues.[5]

[¶ 23]  Affirmed.

[¶ 24]  MILLER, C.J., and KONENKAMP and GILBERTSON, JJ., concur.

[¶ 25]  SABERS, J., dissents.

SABERS, Justice (dissenting).

[¶ 26]  Trooper Swenson is up to his old tricks, and gets by with them again. *See State v. Ramirez,* 535 N.W.2d 847 (S.D.1995) (upholding conviction obtained solely because of Swenson's surreptitious recording of conversation in his patrol car). I dissented in that case, and I dissent again in this one. Why this court sanctions the unconstitutional behavior of a lone overzealous law enforcement officer is mystifying. To ask most motorists, no matter the infraction, whether they have illegal weapons, drugs, or contraband, is not, according to Swenson, a policy of the South Dakota Highway Patrol; on the contrary, it is *Swenson's* policy. It is also *Swenson's* practice to seek consent to search most vehicles he stops: "This is pretty common practice or pretty common procedure for me. I ask a lot of people that I stop for consent to search their vehicle because of the drug problem we have running up and down the interstate."

[¶ 27]  In *State v. Almond,* we reiterated that the State's burden is to establish by clear and convincing evidence that "the search was the result of free, intelligent, unequivocal and specific consent without *any* duress or coercion, actual or implied." 511 N.W.2d 572, 576 (S.D.1994) (emphasis added) (citation omitted). Swenson's technique may be subtle, but it constitutes coercion. He places motorists in his patrol car while he issues any citations, even simple warnings. He tells his prey they are free to leave and almost in the same breath he asks about weapons and drugs. Regardless of the response, by his own admission, he asks for consent to search their vehicle. The request may appear an afterthought to the casual observer but it is not. Swenson testified, "I have been trained and advised how to ask for consent to search."

[¶ 28]  The majority states an often repeated proposition: Consent eliminates the

---

5.  Although I personally find this type of conduct offensive, that is not determinative of whether it is violative of an individual's constitutional rights. There are no cases which preclude this type of conduct; however, in my opinion, such behavior borders on overzealous conduct. Individuals who possess contraband and who, while seated in the back of a patrol car, make incriminating statements regarding such possession, are not entitled to call upon this court to relieve them from the consequences of their own ignorance.

need for probable cause and a warrant. Does this mean law enforcement is permitted to conduct baseless, random fishing expeditions? In *Schneckloth v. Bustamonte,* the United States Supreme Court pointed out that the utility of a consent search was evident in "situations where the police have *some* evidence of illicit activity, but lack probable cause to arrest or search[.]" 412 U.S. 218, 227, 93 S.Ct. 2041, 2048, 36 L.Ed.2d 854, 863 (1973) (listing as further justification for consent searches instances where 1) police seek to investigate suspicious circumstances or 2) to follow up leads developed at the scene of a crime) (emphasis added).[6]

[¶ 29] The United States Supreme Court has since stated that police may question individuals, absent any basis for suspicion, "as long as the police do not convey a message that compliance with their requests is required." *Florida v. Bostick,* 501 U.S. 429, 435, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389, 398–99 (1991). As the Court has noted, whether the defendant felt "free to leave" is not the test:

> We have said before that the crucial test is whether, taking into account all of the circumstances surrounding the encounter, the police conduct would "have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business."

*Id.* at 437, 111 S.Ct. at 2387, 115 L.Ed.2d at 400 (citations omitted). Swenson told Dreps he was "free to go;" however, almost simultaneously he asked: "[A]re you carrying any illegal weapons, drugs or contraband up in the car, are you?" It is doubtful the innocuous "free to go" even registered before the next question, "Do you have a problem with ... Trooper Bard and myself searching the vehicle for those items?" Would a reasonable person have felt "at liberty to ignore [Swenson] and go about his business?" I think not.

The transition between detention and a consensual exchange can be so seamless that the untrained eye may not notice that it has occurred. The undetectability of that transition may be used by police officers to coerce citizens into answering questions that they need not answer, or to allow a search of a vehicle that they are not legally obligated to allow....

Most people believe that they are validly in a police officer's custody as long as the officer continues to interrogate them. The police officer retains the upper hand and the accouterments of authority. That the officer lacks legal license to continue to detain them is unknown to most citizens, and a reasonable person would not feel free to walk away as the officer continues to address him.

*State v. Robinette,* 73 Ohio St.3d 650, 653 N.E.2d 695, 698 (1995) (*Robinette I*), *cert. granted,* —— U.S. ——, 116 S.Ct. 1040, 134 L.Ed.2d 187, *rev'd on other grounds,* —— U.S. ——, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (*Robinette II*) (reversing, as not required by the Fourth Amendment of the Federal Constitution, Ohio Supreme Court's pronouncement of bright-line rule directing officers to make clear the conclusion of a valid seizure and the beginning of a consensual exchange, but not addressing the validity of Robinette's detention). Justice Stevens dissented in *Robinette II,* and he points out that "[a]t no time prior to the search of respondent's vehicle did any articulable facts give rise to a reasonable suspicion of some separate illegal activity that would justify further detention.... As an objective matter, it inexorably follows that when the officer had completed his task of either arresting or reprimanding the driver of the speeding car, his continued detention

---

**6.** This court has pointed to circumstances which justify an officer's seeking consent when his suspicion does not give rise to a probable cause search or arrest. *See, e.g., Ramirez,* 535 N.W.2d at 848 (Trooper Swenson testifies he asked to search Ramirez' car because he perceived "apparent nervousness"); *State v. Nemeti,* 472 N.W.2d 477, 477 (S.D.1991) (stopped motorist "nervous and uneasy"). *But see id.* at 480 (officer's concerns regarding Nemeti's behavior noth-

ing more than "nebulous") (Sabers, J., dissenting); *Ramirez,* 535 N.W.2d at 851 (noting that Swenson was "going to get his man," regardless of what his suspicions were based upon) (Sabers, J., dissenting). In this case, Swenson conceded that he had absolutely no reason to believe Dreps was guilty of any criminal behavior and that the *only* reason his car was searched was because he consented.

346

of that person constituted an illegal seizure. This holding by the Ohio Supreme Court is entirely consistent with federal law." —— U.S. at ——, 117 S.Ct. at 426–27 (Stevens, J., dissenting) (citations omitted). As noted previously, *supra* at note 1, Swenson admits to *absolutely no foundation* for the continued detention of Dreps.

[¶ 30] "Voluntariness is a question of fact to be determined from all the circumstances[.]" *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059, 36 L.Ed.2d at 875. The defendant's knowledge of his right to refuse, while not dispositive, is a factor to be taken into account in determining whether consent was voluntarily given. *Id.* at 249, 93 S.Ct. at 2059, 36 L.Ed.2d at 875. *Accord State v. Nemeti*, 472 N.W.2d 477, 478 (S.D.1991) (focusing on the "nature of a person's *subjective* understanding [of the right to refuse consent]") (citations omitted) (emphasis added).

> [C]itizens who have not been detained immediately prior to being encountered and questioned by police are more apt to realize that they need not respond to a police officer's questions. A "consensual encounter" immediately following a detention is likely to be imbued with the authoritative aura of the detention.

*Robinette I*, 653 N.E.2d at 699. It is clear from the transcript of the secretly recorded conversation between Dreps and his co-defendant that Dreps did not understand that he could withhold consent:

> *Van Ausdale:* Just don't sign a consent to search, I don't know why we gave them permission to search, what would happen if we don't. What happens when you don't?
>
> *Dreps:* I don't know. I don't know. . . .

As Justice Stevens noted in his dissent in *Robinette II*, the officer in that case obtained consent to approximately 786 searches in one year by employing tactics similar to Swenson's: "Repeated decisions by ordinary citizens to surrender that [privacy] interest cannot satisfactorily be explained on any hypothesis other than an assumption that they believed they had a legal duty to do so." *Robinette II*, —— U.S. at ——, 117 S.Ct. at 425 (Stevens, J., dissenting).

[¶ 31] Swenson had a plan in mind the instant he pulled Dreps over. He did not wait for him to produce his license or other papers, but instead left the other trooper by the car while he returned to his patrol car to activate the hidden tape recorder. He summoned Dreps via his outer audio speaker. As soon as he had issued warning tickets and obtained "consent," he ordered Dreps to the back seat, where his passenger soon joined him.

[¶ 32] Swenson claims the reason he places motorists in the back seat of his patrol car is for his safety: "And when I'm searching a vehicle with my back to them, I prefer they be in somewhere where I've got some time to react if they were to try to attack me in any way." Once again, this is policy according to Swenson, not the highway patrol: "I want it clear, that is my personal policy. That is not the policy of the highway patrol." Additionally, it is rather interesting Swenson attributes this "policy" to safety when he admits he did not search either man, even though Dreps told him Van Ausdale had a gun.

[¶ 33] We already know it is part of Swenson's modus operandi to secretly tape record his quarry:

> Most officers use this device to record important information and conversations to prove proper procedures were followed such as *Miranda* and Implied consent warnings. Not Officer Swenson. He not only conveniently omits to turn on the machine during the time when *his* conduct might be in question, he secretly activates it to record the conversation in the back seat of the patrol car while he's searching Ramirez's car. He claims he did it for his safety—and not to compel or elicit an incriminating response. In my view, that's why he placed them in custody and that's why he secretly activated the recording device.

*Ramirez*, 535 N.W.2d at 851–52 (Sabers, J., dissenting). His colleagues are also aware of his hobby: Bard testified although he didn't see Swenson turn on the tape recorder, he assumed since it was his practice to do so, that it was probably running while Dreps and

Van Ausdale were seated in the back of the car.

[¶ 34] The statements the two men made to each other in the patrol car were prompted by actions Swenson undertook with an intent to elicit a response.[7] As I stated in *Ramirez,* Swenson's actions should be scrutinized because they constituted an interrogation under *Miranda:*

> It's also common practice for state troopers to advise people of their *Miranda* rights when they place them in custody. Not Officer Swenson. Officer Swenson not only placed them in custody, and secretly activated the recording machine, but failed to advise them of their right to remain silent. His search of their car under these circumstances was bound to compel a response from them which he was secretly taping. In *State v. Cody,* 293 N.W.2d 440, 447 (S.D.1980), we stated:

>> The term "interrogation" under *Miranda* refers not only to express questioning, but also to any words or *actions* on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect.

*Id.* at 852 (Sabers, J., dissenting) (citation omitted).

[¶ 35] If Swenson is acting outside the scope of established South Dakota Highway Patrol procedures, as he admits he is, that entity should "decide whether this type of activity should be 1) Policy; or 2) prohibited—not only in theory, but in practice." *Id.* Until that decision is made, this court should stop sanctioning the coercive, and blatantly unconstitutional, tactics of Trooper Swenson. The "classic admonition" of *Boyd v. United States* merits repetition:

> It may be that it is the obnoxious thing in its mildest and least repulsive form; but illegitimate and unconstitutional practices get their first footing in that way, namely, by silent approaches and slight deviations from legal modes of procedure. This can only be obviated by adhering to

the rule that constitutional provisions for the security of person and property should be liberally construed. A close and literal construction deprives them of half their efficacy, and leads to gradual depreciation of the right, as if it consisted more in sound than in substance. *It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.*

116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746, 752 (1886) (quoted in *Schneckloth,* 412 U.S. at 228–29, 93 S.Ct. at 2048, 36 L.Ed.2d at 863–64) (emphasis added).

---

7. In *Ramirez,* Swenson testified that he obtained incriminating information in the past by employing the same tactics.